MING, EXECUTRIX, RESPONDENT, *v.* PRATT, APPELLANT.

[No. 1,050.]

[Submitted March 2, 1899. Decided March 6, 1899.]

*Contract—Construction—Authority of Agent—Evidence—Interpretation.*

1. A contract between an owner of an opera house and a manager of an opera company, providing that the opera company should receive a fixed sum and 85 per cent. of all moneys received in the sale of seats, does not mean that the percentage should be computed only on the amount of the receipts in excess of the fixed sum, but entitles the company to such sum and a percentage of the gross receipts.
2. A contract entirely reduced to writing cannot be orally contradicted.
3. Where the intent of the parties to a contract is explicitly declared on the face of the writing, resort cannot be had to the surroundings of the parties, the subject-matter, and prior negotiations to determine its construction.
4. A principal is not bound by a promise of his agent, where there is no evidence that the agent acted within the scope of his agency, or attempted to bind any other person than himself.
5. Resort to interpretation is never to be had where the meaning is free from doubt. It is to be availed of only when, without its aid, the meaning or effect of the contract would be doubtful or uncertain.

*Appeal from District Court, Lewis and Clarke County; Henry N. Blake, Judge.*

ACTION by Katherine L. Ming against Charles H. Pratt. Judgment for plaintiff. Defendant appeals. Reversed.

*C. B. Nolan,* for Appellant.

*J. W. Kinsley* and *H. J. Burleigh,* for Respondent.

The rule is settled that a written contract shall be so inter-

preted as, if possible, to carry out what the parties meant. (Bishop on Contracts, Sec. 380; *Collins* v. *Lavelle*, 44 Vt. 230; *Wolfe* v. *Scarborough*, 2 Ohio St. 361; *Higgins* v. *Wasgatt*, 34 Maine 305.) Contracts will always be construed reasonably, and in accordance with what the evidence shows the subject-matter to be, and the consequent object of the parties to it. (*Chamberlain* v. *Baltimore & Ohio R. Co.*, 6 Cent. Rep. (Md.) 471; *Hildebrand* v. *Bloodsworth*, 12 Oregon 75; *Mobile & Mont. R. Co.* v. *Jurey*, 111 U. S. 584; *Coleman* v. *Commins*, 77 Cal. 548.) Interpretation will lean to the rendering which will make the contract reasonable and just. (Bishop on Contracts, Sec. 400; *Dederick* v. *Wolfe*, 24 Am. St. Rep. 283.) The court was bound to put itself, as near as may be, in the situation of the parties to this contract, and from a consideration of the surrounding circumstances and the occasion, and apparent object of the parties, determine the meaning and intent of the language used by them in their agreement. (*United States* v. *Power*, 6 Mont. 274; *Smith* v. *Kerr*, 2 Am. St. Rep. 362; *Chism* v. *Schipper*, 14 Am. St. Rep. 668.)

**PER CURIAM.**—Plaintiff, as executrix of the will of John H. Ming, deceased, owned and conducted an opera house in Helena during the year 1894; defendant was the proprietor and manager of the Marie Tavery Grand English Opera Company. On December 12, 1894, plaintiff and defendant entered into a written contract, by which it was agreed that the Tavery Company should give one performance at plaintiff's opera house on the 22nd of that month. The only provision of the contract pertinent to the matters considered in this Court is the following:

"It is agreed that Charles H. Pratt, manager of the said Marie Tavery Opera Company, is guaranteed to receive as his share not less than eight hundred and fifty (850) dollars and eighty-five (85) per cent. on all moneys received in the sale of seats for said engagement. * * * Settlements *pro rata* to the above division to be made during the first act of said performance."

Plaintiff sued to recover damages for an alleged breach of the contract, the complaint stating the failure of the troupe to occupy the house on December 22nd, to her damage $150, and that plaintiff was obliged to send her agent twice to Butte for the purpose of meeting and conferring with defendant in respect of the engagement, at an expense of $32, which, by the breach alleged, was lost to her.    The trial court found for plaintiff, and judgment against defendant for $127.50 damages was entered.    From an order refusing a new trial, and from the judgment, defendant appeals.

The sum allowed as damages consists of two items: (1) For loss of sale of tickets, $106; (2) for expenses of trip to Butte at defendant's request, $21.50.    The allowance of the $21.50 is not justified by the evidence.    It appears that one Hirsch, who was agent for defendant in certain matters, offered to pay the expenses of plaintiff's representative if the latter would go to Butte and talk with defendant about the expected performance concerning which a controversy had arisen; but there is no proof tending to show that in making the offer or promise Hirsch acted within the scope of his agency, or that he even attempted to bind any person other than himself, or that defendant ratified or adopted the promise.    This item should have been rejected.

As to the first item, the court found that the profit which plaintiff would have received from performance of the contract by defendant was $106; and arrived at the result by interpreting the contract as meaning that the percentage to which defendant would be entitled should be computed only on the amount of the receipts in excess of $850.    In this there was error.    The contract expressly provides that defendant shall have not less than $850 and 85 per cent. of all moneys received from the sale of seats.    The language is clear, unambiguous, and free from any uncertainty; its obvious meaning is that defendant was to receive $850, and also 85 per cent. of the gross receipts.    There is nothing in the contract touching the price of the seats, and, for aught that appears, plaintiff might have fixed such prices as she desired.    The contract is

not so unjust and unconscionable that courts of law will refuse to give it effect.   By the evidence it was shown that the total receipts would not have exceeded $1,558.50 had the performance taken place, in which event defendant would have been entitled, under the contract, to $2,174,72, or $616.22 more than the total receipts.   No effort was made to reform the contract so that the intention of the parties, if different from the one so clearly expressed, might appear.   Except where, in equity, it is sought to be, or is treated as, reformed, a contract entirely reduced to writing may not be orally contradicted.   (See *Gaffney Mercantile Co.* v. *Hopkins*, 21 Mont. 13, 52 Pac. 561.)   As aids to an understanding of a written contract, but not to alter its terms, the surroundings of the parties, the subject-matter, and even prior and contemporaneous oral negotiations and promises illumining the design and intent, may perhaps be proved; but resort to such evidence is proper only when necessary, and is not permissible where the intention and understanding are explicitly declared upon the face of the writing itself.   (See *Sanford* v. *Gates*, 21 Mont. 277, 53 Pac. 749.)   "Interpretation is the act of making intelligible what was before not understood, ambiguous, or not obvious.   It is the method by which the meaning of language is ascertained."   (11 Am. and Eng. Ency. Law, 507.)   Resort to interpretation is never to be had where the meaning is free from doubt; it is to be availed of only when, without its aid, the meaning or effect of the contract would be doubtful or uncertain.

It is manifest upon the record presented that, if defendant violated the contract as written, plaintiff was entitled to no more than nominal damages, which would not carry costs. Determination of other questions arising upon the errors assigned is therefore unnecessary at this time.

The judgment and order are reversed, and the cause is remanded, with direction to the District Court to grant a new trial.

*Reversed and remanded.*