# CHARLESTON

SMITH v. SOUTH PENN OIL CO.

Submitted January 23, 1906.    Decided March 6, 1906.

1. MINES AND MINERALS—*Oil Lease—Construction.*

The following clause in a lease for oil and gas purposes imposes no obligation to pay rent: "Provided, however, that this lease shall become null and void and all rights hereunder shall cease and determine unless a well shall be completed on the said premises within three (3) months from the date hereof, or unless the lessee shall pay at the rate of sixty-five and 25-100 (65 25-100) dollars, quarterly, in advance, for each additional three months such completion is delayed from the time above mentioned for the completion of such well until a well is completed." (p. 206.)

2. Same—*Liabilities of Lessee.*

> If, after having drilled one unproductive well under such a lease, and paid commutation money until the completion thereof, the lessee is permitted to drill another, without making further payments, and without notice that any compensation will be demanded or required of him for such further use and occupation of his premises, none can be recovered. (p. 209.)

3. Same—*Conduct of Parties.*

> Such a contract being ambiguous as to what shall constitute a completed well, the conduct of the parties, in treating the completion of an unproductive well as an act sufficient to vest in the lessee a right to make further exploration without additional payments, is conclusive upon them, under the principle of practical construction. (p. 208.)

Error to County Court, Tyler County.

Action by Albert H. Smith against the South Penn Oil Co. Judgment for plaintiff, and defendant brings error. Judgment reversed, and judgment for defendant rendered.

A. B. Fleming, R. F. Fleming, C. Powell, and Thos. P. Jacobs, for plaintiff in error.

J. V. Blair, J. H. Strickling, and M. K. Duty, for defendant in error.

Poffenbarger, Judge:

Judgment for $217.50, with interest and costs, was rendered by the circuit court of Tyler county, on a demurrer to evidence, against the South Penn Oil Company, in favor of Albert H. Smith, in an action of *assumpsit*, for compensation for the use and occupation of real estate, and said South Penn Oil Company seeks a reversal of said judgment.

Possession of the land was taken and held under a lease executed to defendant for oil and gas purposes, containing no express covenant, binding the lessee either to drill a well or pay rent. The only covenants are to deliver in the pipe lines, to the credit of the lessors, their heirs and assigns, one-eighth of the oil produced and saved from the premises; to pay $200.00 per year for the gas from each gas well on the premises, the product of which is marketed and used off of the premises; to locate all wells so as to interfere as little as possible with the cultivated portions of the farm; and to pay all damages to growing crops by reason of operations. Then follows this clause:

"Provided, however, that this lease shall become null and void and all rights hereunder shall cease and determine unless a well shall be completed on the said premises within three (3) months from the date hereof, or unless the lessee shall pay at the rate of sixty-five and 25-100 (65 25-100) dollars, quarterly, in advance, for each additional three months such completion is delayed from the time above mentioned for the completion of such well until a well is completed. Such payments may be made direct to the lessors or deposited to their credit in McKim Post Office, Tyler county, W. Va."

The lease bears date January 18, 1896. Seven payments of $65.25 each, for delay in drilling, were made, and a well was completed in December, 1897. The lessee then abandoned the premises until the spring of 1899, when it re-entered thereon and completed another well in May of that year. Both wells were unproductive and the tools, machinery and appliances were finally removed from the premises in January or February, 1900. This action was brought for rent for the whole period from January 18, 1898, until January 18, 1900, at the rate of $65.25 per quarter.

Barring the fact of actual occupancy and use of the leased premises, this case is governed by the principles announced in *Snodgrass* v. *South Penn Oil Co.*, 47 W. Va. 509, following the case of *Glasgow* v. *Gas Co.*, 152 Pa. Sta. 48. The lease contains, not a covenant to pay rent, but only a clause, giving to the lessee the option or privilege of paying a specific sum every three months in advance, as a means of keeping the lease alive and operative. It was not bound to do so and could, without the violation of any terms in the lease, allow its rights to be forfeited and to cease and determine by failure to drill a well or pay said sum. It merely gave the privilege of extending the lease by periodical payments of the amount specified.

The declaration, however, is not predicated upon any covenant in the lease. The demand is for the use and occupation of the land "by the said defendant at its special instance and request, and by the sufferance and permission of the said plaintiff for a long space of time before, then elapsed, had, held, used, occupied, possessed and enjoyed." But there is no evidence of any occupancy otherwise than under the lease and for the purposes therein expressed, and that instrument

imposes no obligation. It simply permitted occupation and use for the purpose of exploring for oil and gas. The lessors may have had it in their power to prevent the second entry upon the property, but if so, they waived that right and took the benefit of the large expenditures incident to the drilling of the second well. It was not an occupation and use for the sole benefit of the lessee, but for the mutual benefit of both parties. As one unsuccessful exploration had been made, and the lessee was permitted, without objection, to drill another well, under a contract indefinite and uncertain as to the rights of the parties after the drilling of such a well, what should be deemed a completed well being undefined by the lease, this conduct on the part of both lessors and lessee amounted to a practical construction thereof. The lessee claimed the right to go on and put down another well without making additional payments for continuance of the lease until completion thereof, and the lessors, by their silence and acquiescence, assented and agreed to this interpretation of the contract, and, having done so, cannot now set up a claim for rent. The testimony of the plaintiff makes this theory plain. He said: "I had a chance to lease my land, but when the people wanting it would learn the situation they said they didn't want it while the South Penn Company have a lease on it, but said if I could get it released they would take my land. Then I spoke to M. K. Duty and asked him to speak to them and see if they would not give it up, and he wrote to them and they answered back." But what they said is not stated. The witness did not produce the letter nor prove its contents and he further testified that he did not enter into a written lease or further agreement with the lessee, concerning the drilling of the second well. The applications of this rule are many and varied. (See Page Con., section 1126.) It cannot avail against the plain terms of a deed or other contract and the conduct of a party, relied upon as expressive of his understanding of the contract, must be positive and unequivocal, and it must appear that he was cognizant of the actual intention of the other party. *Id.* But all these circumstances are combined here. Smith, suspecting a claim by the lessee of right to make further exploration without paying additional amounts, addressed an inquiry to it to verify his suspicion. In response thereto the second well

was soon afterwards put down, without any objection or demand for payment of rent. It is plain, therefore, that, in the opinion of both parties, the lessee, by drilling the first well, though unproductive, acquired the right to make further exploration without payment of additional commutation money. The decisions of this Court afford a number of illustrations of the application of this principle. *Heatherly* v. *Bank*, 31 W. Va. 70; *Scraggs* v. *Hill*, 37 W. Va. 460; *Crislip* v. *Cain*, 19 W. Va. 438, 441; *Hurst* v. *Hurst*, 7 W. Va. 299; *Caperton's Admr.* v. *Caperton's Heirs*, 36 W. Va. 479; *Chapman* v. *Coal Co.*, 54 W. Va. 193. That the deed is ambiguous as to what is sufficient to vest a right of exploration, without payment of money, admits of no doubt. It declares that it shall remain in force for the term of ten ten years, and then provides that it shall cease and determine "unless a well shall be completed" on the premises within three months, or unless the lessee shall pay a certain amount of money every three months "until a well is completed." What kind of a well? Some are productive and some are unproductive, and it costs a considerable amount of money to put down either kind. The question is, not what, in point of fact or law, constitutes a well, but what is a well within the meaning of the deed? No court or jury is able to answer it as well as the parties themselves, and they have responded by their conduct. It is not intended here to intimate that the drilling of an unproductive well vested any right in the lessee other than that of exploration as aforesaid, or absolved it from any further duty in the premises in case it desired to hold the property for the full term specified. Principles relating to this subject are discussed fully in *Bridgewater Gas Co.* v. *Parish Fork Oil Co.*, 51 W. Va. 583; *Steelsmith* v. *Gartlan*, 45 W. Va. 27; *Urpman* v. *Lowther Oil Co.*, 53 W. Va. 501.

In view of the foregoing principles and conclusions, the error of the court, in overruling the defendant's demurrer to the evidence, is manifest. The judgment will, therefore, be reversed, the demurrer to the evidence sustained and judgment rendered for the plaintiff in error, with its costs in the court below as well as in this Court.

*Judgment reversed and judgment for defendant.*