**BEARMAN v. DUX OIL & GAS CO. et al.**

No. 6987—Opinion Filed March 20, 1917.

Rehearing Denied July 10, 1917.

(166 Pac. 199.)

(Syllabus by the Court.)

**1. Oil and Gas—Leases—Construction.**

It is a rule of construction in this state, applied to oil and gas leases, that where contracts are optional in respect to one party, they are strictly construed in favor of the party that is bound and against the party that is not bound.

**2. Contracts—Construction.**

In the construction of contracts, it is the duty of the court to place itself, as far as possible, in the situation of the parties at the time their minds met upon the terms of the agreement, and from a consideration of the writing itself, ascertain their intention, and if this cannot be done from the instrument itself, the circumstances under which it was made, and the subject-matter to which it relates, may be considered, and with these aids, the court should so interpret the contract as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as that intention is ascertainable and lawful.

**3. Oil and Gas—Leases—Construction.**

An oil and gas lease provided that the lessee should complete a well on the leased premises within three months from the date thereof or pay at the rate of $20 for each additional three months such completion was delayed, but was silent as to the time at which such rentals should be paid. Said lease also contained a provision whereby, in consideration of $1, the lessor waived his right to demand or declare a cancellation or a forfeiture thereof, except for the nonpayment of rentals when due, and also contained a further provision which authorized the lessee, at any time, on the payment of $1, to surrender the lease for cancellation, after which all payments and liabilities thereafter to accrue and determine should cease. At the time the lease was executed, the parties agreed that the rentals due thereunder should be paid in advance, and in accordance with this agreement rentals were for a time paid in advance of the three months' period for which they were due. Held, that applying a strict rule of construction and adopting the construction which the parties have placed upon this agreement, the lease will be construed as requiring the rentals due thereunder to be paid in advance.

**4. Same—Forfeiture.**

Where the rentals due under the terms of an oil and gas lease are payable in advance of the term for which they are due, and said lease contains a clause authorizing the lessor to declare a forfeiture thereof for nonpayment of rentals when due, and where said rentals are not paid when due and a for-

feiture is declared by the lessor for such non-payment, all rights of the lessee are determined, and he cannot have specific performance of the lease directly or indirectly.

### 5. Same—Rights of Lessee.

Where plaintiff's lease has been declared forfeited for nonpayment of rentals when due, and another lease thereafter executed to another person, upon the same premises, the plaintiff cannot take advantage of a surrender clause in the second lease authorizing the lessee therein to surrender same, as such provision is for the benefit of the lessor, and he alone can take advantage thereof and declare the lease forfeited.

Error from District Court, Tulsa County; L. M. Poe, Judge.

Action by the Dux Oil & Gas Company against Sam Wilson and another, in which J. A. Bearman intervened. There was a judgment for plaintiff, and intervener brings error. Reversed and remanded with instructions.

O'Meara & Sipe, for plaintiff in error.

Blake & Hazlett, for defendants in error.

HARDY, J. This action was commenced in the superior court of Tulsa county by the Dux Oil & Gas Company, hereinafter referred to as plaintiff, against Sam and Lulie Wilson, who will be referred to as defendants, seeking to enjoin said defendants from interfering with plaintiff in exploring for oil and gas under a certain oil and gas lease executed by defendants. Plaintiff in error, J. A. Bearman, who will be referred to as intervener, was permitted to intervene. The case was afterwards transferred to the district court of said county. The lease was dated February 1, 1912, and for a consideration of $1 leased the premises therein described to J. H. Larson for a term of five years, and as long thereafter as oil and gas was produced on said land. Said lease, which was assigned by Larson to plaintiff, contains the following provisions:

"The party of the second part agrees to complete a well on said premises within three months from the date hereof or pay at the rate of twenty ($20.00) dollars for each additional three months such completion is delayed for the time above mentioned for the full completion of such well until a well is completed, and it is agreed that the completion of such well shall be and operate as a full liquidation of all rent under this provision during the remainder of the term of this lease. * * * For and in consideration of $1.00, the receipt of which is hereby acknowledged, the first parties hereby expressly waive their right to demand or declare a cancellation or a forfeiture of this lease except for the nonpayment of rentals when due, and further agree that the party of the second part, his successors or assigns, shall have the right at any time on payment of $1.00 to the parties of the first part, their heirs or assigns, to surrender this lease for cancellation after which all payments and liabilities thereafter to accrue under and by virtue of its terms shall cease and determine."

It is conceded by plaintiff that the clause last above quoted reserves to the lessor the right to declare a forfeiture of the lease for nonpayment of rentals when due, and contended by it that the right to declare a forfeiture for any other cause is expressly waived in consideration of $1 paid. Intervener contends that because the lease contains a surrender clause under which plaintiff can at any time, on payment of $1, surrender its lease for cancellation, after which all payments and liabilities thereafter to accrue under and by virtue of its terms shall cease, that the same is unilateral and optional as to the lessee, and therefore optional as to the lessor, and that by reason thereof lessor had the right to refuse to accept rentals at any time, and that the provision waiving the right of forfeiture except for nonpayment of rentals when due is invalid; and in support of this contention cites the following decisions of this court: Brown v. Wilson, 58 Okla. 392, 160 Pac. 94, L. R. A. 1917B, 1184; Frank Oil Co. v. Belleview, etc., Oil Co., 29 Okla. 719, 119 Pac. 260, 43 L. R. A. (N. S.) 487; Kolachny v. Galbreath et al., 26 Okla. 772, 110 Pac. 902, 38 L. R. A. (N. S.) 451; Mitchell v Probst, 52 Okla. 10, 152 Pac. 597. In none of those cases was a provision contained similar to that here involved. However, owing to the view we take of the case, it will be unnecessary for us to determine this point. The principal question argued by both sides and the one which we think is decisive of this case is as to when rentals were payable under the terms of said lease; that is, whether they are payable in advance or on or before the expiration of the three-month period for which they are due, and for the purpose of passing upon this question we shall assume that the contention of plaintiff is the correct one, and that the right to declare a forfeiture is waived except for the nonpayment of rentals when due.

It is a rule of construction in this state, applied to oil and gas leases, that where contracts are optional in respect to one party, they are strictly construed in favor of the party that is bound and against the party that is not bound. Frank Oil Co. v. Belleview, etc., Oil Co., 29 Okla. 719, 119 Pac. 260, 43 L. R. A. (N. S.) 487; Kolachny v. Galbreath et al., 26 Okla. 772, 110 Pac. 902, 38 L. R. A. (N. S.) 451; Brown v.

Wilson, supra; Warner v. Page, 59 Okla. 259, 159 Pac. 264. The lessee had the option to drill or pay or not do either, and in the event he did not drill, might extend the lease by paying the rental when due. It is true that in the cases cited the delay money was by express terms payable in advance, and therefore the particular clause here involved was not construed by the court; but the same rule of construction would apply to this provision as to all the other terms thereof, and no time being fixed in the lease as to when said rental should be paid, applying a strict rule of construction thereto as against the lessee and in favor of the lessor, we are justified in holding that such rental should be paid in advance. The $1 consideration paid for the lease at the time of its execution supported the first term of three months and no other stipulation, and the lease being an option, if the lessee desired thereafter to retain his rights thereunder, it was necessary for him to pay the rentals prescribed by the lease. The lessee having the option to pay the rental, and thus extend the lease, the same is operative against the lessor during such extension only upon the payment of such rental; the rights of the parties being correlative and mutual. Frank Oil Co. v. Belleview Oil Co., 29 Okla. 720, 119 Pac. 260, 43 L. R. A. (N. S.) 487; Brown v. Wilson, supra. In Dill v. Fraze, 169 Ind. 53, 79 N. E. 971, Dill and wife, in consideration of $1, gave to Fraze an oil and gas lease on 40 acres of land for five years, and as long thereafter as oil and gas was found thereon in paying quantities or the rental paid thereon as provided in the contract, and the lease provided that if no well was completed within 60 days, and No. 2 well in 60 days thereafter from date, the grant should be null and void, unless second party should thereafter pay at the rate of $40 for each year such commencement was delayed; and the lease further conferred the right upon the lessee to cancel and annul the same at any time upon the payment of $1 to the lessor and by releasing the same of record. The court said:

"The unit of payment was $40, and the question arises whether such payment was to be made in advance. While the ordinary rule governing rentals is that payment in advance is not required, unless so stipulated in the contract, yet, as the endeavor of courts in the enforcement of agreements is to effectuate the intent of the makers, we are of opinion that, in the circumstances of this case, it should be held that it was the purpose of the parties that payment should be made in advance. The situation of appellant must be considered. There was no express agreement on the part of the operator that he would even explore for gas or oil; on the contrary, he had reserved the right at any time, upon the payment of the nominal consideration of $1, to cancel and annul the contract. He had not agreed that he would pay any sum in the nature of rent."

So in the case before us, the lessee has not bound himself to develop the premises, or to pay any of the rental money provided for in the lease, but, on the contrary, has expressly reserved the right at any time, on payment of $1, to surrender the lease for cancellation, after which all payments and liabilities thereafter to accrue shall cease and determine. The lessor could not compel him to drill during the first period of three months nor forfeit the lease for a failure so to do, for the $1 paid supported the lease for that term. Thereafter the lessor had no assurance that any rental would be paid, for under the surrender clause the lessee might relieve himself of any obligation in that respect.

The parties have themselves construed the lease as requiring all rentals to be paid in advance. When he obtained the lease, Larson agreed to pay the rental in advance—both the Wilsons testified to this fact, and in this they are corroborated by the witness Fannin, who was present at the time. Larson testifies that he did not remember having made this statement, yet the facts show that all the rentals were paid in advance, five different payments being made; the last on April 30, 1913, for the quarter commencing May 1st following. In the construction of contracts, it is the duty of the court to place itself as far as possible in the situation of the parties at the time their minds met upon the terms of the agreement, and from a consideration of the writing itself (section 949, Rev. Laws 1910) ascertain their intention, and if this cannot be done from the instrument itself, the circumstances under which it was made and the subject-matter to which it relates may be considered (section 957), and with these aids, it is the duty of the court to so interpret the contract as to give effect of the mutual intention of the parties as it existed at the time of contracting so far as that intention is ascertainable and lawful (section 946). In applying these statutory rules of construction, the court, in order to ascertain the intention of the parties, will consider an interpretation placed upon the contract by them, and will also look to their action thereunder before any controversy arose between them as to its meaning. 2 Elliott, Contracts, sec. 1537; Thornton, Oil and Gas, sec. 79; Smith v. South Penn. Oil Co., 59 W. Va. 204, 53 S. E. 152. And such construction, when reasonable, will be adopted and enforced by the courts, and

the construction placed thereon by the parties thereto will prevail where the language used will reasonably allow of such construction, even though the court would probably adopt a different construction were it not for the particular construction already placed by the parties on their agreement. Elliott, Contracts, secs. 1508, 1537, 1538; 9 Cyc. 588; 6 R. C. L. sec. 241.

In the case of Brick Company v. Bailey, 76 Kan. 42, 90 Pac. 803, 12 L. R. A. (N. S.) 745, Bailey and wife had executed an oil and gas lease to the Pittsburg Vitrified Paving & Building Brick Company, licensing the brick company, in consideration of $1 and of the agreements therein contained, to bore wells for oil and gas on the premises described, and to occupy the premises so far as necessary for operating wells, laying pipes, etc., for the term of ten years, and so much longer as oil and gas should be found in paying quantities, or the rental paid thereon. By a subsequent provision the company agreed to complete a well within two years from date of the contract, reasonable unavoidable delays and accidents excepted, or in default thereof, to pay a yearly rental of 25 cents per acre from the expiration of the two years until a well should be completed, and a failure either to complete a well or make the payments rendered the contract void after the lapse of two years. It was further provided that the rental should be paid on the first day of the seventh month after the date of the lease. The parties had mutually construed the lease and acted upon the construction, and in accordance therewith, on the 24th day of October, 1902, fifty days after the execution of the lease the company paid the lessor the rentals for the year ending September 4, 1903, and on September 2, 1903, made another payment as rental for the year ending September 4, 1904. The court adopted the construction placed thereon by the parties, although it said that were it required to reconcile those provisions and arrive at the intent of the parties, it would probably conclude that the rent began to accrue two years from the date of the lease, viz. September 4, 1904, and that the first installment thereof was payable April 1, 1905, and annually thereafter until the company completed a well or surrendered the lease another installment would become due and payable.

There is nothing in the language of the lease before us that fixes the time at which the rentals due thereunder shall be paid, and from the instrument itself we are unable to say whether the parties intended that it should be paid in advance or at the expiration of the period for which it was due, and we are authorized to look to the circumstances under which the instrument was executed, and to the construction placed thereon by the parties thereto, and to their subsequent acts thereunder, and by means of the information thus obtained we are enabled to determine what their intention was, and the evidence clearly shows that they mutually construed the contract as requiring that said rentals be paid in advance, and that acting under this construction rentals were paid and accepted in accordance therewith. There is no language in the lease that would prevent such construction, and adopting this view, which has governed the conduct of the parties under the agreement, we hold that said rentals were due and payable in advance on or before the beginning of each three-month period.

The lease was taken by Larson for the benefit of the Dux Oil & Gas Company, of which he was vice president, and assigned by him to said company on February 10, 1912, and all of the rentals paid thereon were paid on behalf of and for the benefit of said company. Upon nonpayment of the rental for the quarter commencing August 1st, in accordance with the terms of the lease. Sam Wilson, the lessor, wrote several letters requesting payment thereof, which letters were ignored, and he then gave written notice, demanding a release because of such nonpayment, and stating that no more rentals would be accepted. Thereafter, on September 8, 1913, he and his wife, for a consideration of $80, executed an oil and gas lease upon the same premises to the Konora Oil & Gas Company, which, through various assignments, became the property of the intervener, J. A. Bearman. On October 24, 1913, after Wilson's notice of forfeiture and after his execution of the later lease to the Konora Oil Company, and after a producing well had been brought in in close proximity to the premises, plaintiff sent a draft for the rental for the quarter beginning August 1, 1913, to the First National Bank of Broken Arrow for deposit to the account of Sam Wilson, which the bank, under instructions from Wilson, rejected and returned. On November 1st the Dux Oil & Gas Company sent its "farm boss" with a load of timber to take possession of the premises and start the erection of a drilling rig. Wilson refused to admit him into possession, and thereupon the timber was unloaded on adjacent premises. On November 3d the plaintiff filed in the superior court of Tulsa county its petition, under oath of Larson, its vice president, alleging that it was at that time in possession of the premises and right-

fully in such possession, and had placed thereon large quantities of timber which the defendants were threatening to destroy, and that said defendants were also threatening to injure the persons of the officers and employes of the plaintiff, and were insolvent, and that unless they were prohibited by injunction from interference with plaintiff, it would be irreparably damaged, etc. At the time this petition was filed, and without notice to the defendants, and without the taking of any evidence, plaintiff obtained a temporary injunction restraining defendants from molesting or interfering with it in and about the possession of said premises, and was admitted to possession of the premises by defendants under the belief that the writ required them to do so. After obtaining possession, plaintiff erected a drilling rig on the premises, which was later torn down and removed to another location, where it was not completed until the last of December, 1913. The actual work of drilling a well was commenced January 1, 1914, and a well completed some time between the 18th and 22d of the same month. On January 6, 1914, intervener. Bearman, served ahe plaintiff with a written notice fully describing the lease to the Konora Oil Company and the assignment vesting the title thereto in him, and warning it to desist from operations thereon, and notifying it that he would hold it accountable for any oil or gas extracted. On January 15th he applied to the superior court for leave to intervene in this litigation, and on January 16th the court entered an order making him a party and permitting him to make defense and file cross-petition against plaintiff, which he did on January 30. 1914. Various amendments were made to the pleadings, and the case was tried to the court, who found that the rentals were not payable in advance, and further found:

"And as between the plaintiff and the defendants Sam Wilson and Lulie Wilson, the court decides that though the lease to J. H. Larson, while executory, would be unenforceable in a court of equity, and the evidence shows that the plaintiff was not in possession of the premises covered by it, had no timber or other property thereon when it instituted this suit and obtained the temporary injunction therein granted against said defendants, being excluded from possession by them; that they admitted defendant to possession only after service of said injunction on them and in the belief that it required them to, and that it was plainly the purpose of the plaintiff in obtaining and serving said injunction on them that they should so understand it. Nevertheless, said lease was valid at law and entitled the plaintiff to possession, and, having obtained possession under the terms of said lease, it was legally entitled to retain possession of the premises, and the plaintiff

being now in possession and having acted under said lease by developing the premises and producing oil in paying quantities, as it is now doing, said lease is enforceable in equity as well as at law by reason of which judgment should be rendered in favor of the plaintiff and against the defendant."

Judgment was thereupon rendered in favor of plaintiff in accordance with these findings, and defendants and intervener filed motions for a new trial, which were overruled, and intervener, Bearman, prosecutes error.

The court was wrong in rendering judgment as it did. The rentals in said lease being payable in advance, a failure upon the part of the lessee to pay same when due conferred upon the lessor the right to declare same forfeited for such nonpayment, after which all rights of the lessee thereunder would cease. Kolachny v. Galbreath, supra; Brown v. Wilson, supra. There is no controversy that the rentals for the quarter commencing August 1st were not paid in advance, nor until October 24, 1913, just a few days before the expiration of that period and after a producing well in close proximity to the premises had been brought in. Neither is there any contention that all prior rentals had not been paid in advance. The lessor having exercised his option to declare the lease forfeited, the lessee could not, in a court of equity secure performance thereof directly or indirectly. In Kolachny v. Galbreath, Scott, the original allottee, leased the premises to Kolachny. Thereafter the allottee sold the premises to Severs, who leased them to Galbreath and others. Kolachny sued Severs, and those to whom he had leased the premises, to set aside the lease executed by him, and prayed an injunction restraining them from developing the land and permitting plaintiff to operate under his lease. This was said to amount to specific performance in equity, and because the lease to Kolachny conferred an option upon the lessee which he might terminate at any time, it was held that such option deprived the lessee of the right to specific performance directly or indirectly. In Brown v. Wilson, Ruhl and wife brought suit to establish as a matter of record the forfeiture of a certain lease executed by them and to cancel the same upon the ground that it was unilateral, unperformed, optional as to the lessee, and therefore optional as to the lessor, and that there was default in the payment of rentals due under the lease. Pending this suit, Cameron and Wilson, who had become assignees of the lease upon a portion of the premises, without leave, entered and took possession of that portion of which they were the assignees, erected a rig, and commenced to drill a well, and thereafter struck oil in paying

quantities, whereupon they brought suit to cancel the second lease as a cloud upon their title, and to restrain plaintiffs in error, who had succeeded to the rights of Ruhl and wife, from claiming thereunder and from interfering with their possession. Before being restrained, however, plaintiffs in error took possession of the well and obtained an order restraining Wilson and the other defendants and those claiming under them from interfering with their possession. The two cases were consolidated, and a trial to the court resulted in a general judgment for defendants. The judgment was reversed in this court upon the ground that the lease to Wilson conferred an option on the lessee to drill or pay, and that a failure to do either conferred upon the lessor the option to declare the same forfeited, and, inasmuch as there had been a default in the payment of rentals and the lessor had exercised his option so to do, and had declared the lease forfeited, he was entitled to have the same declared judicially forfeited and canceled as a cloud upon his title, and relief was denied to the parties claiming under the lease which had been forfeited for nonpayment of rentals.

These decisions are conclusive against the claims of the plaintiff. The lease under which it claims had been forfeited for nonpayment of rentals, and thereafter, by use of the process of the trial court, they obtained possession of the premises, and under such possession so obtained, with full knowledge of the rights of intervener, proceeded to develop the premises. What they sought, and what they in effect obtained, was a decree awarding specific performance of a lease that was nothing more than an option to drill or pay rentals, and this, after they had failed to drill and had made default in the payment of rentals, according to the terms of the lease, for which failure a forfeiture had been expressly declared by the lessor. This they could not obtain in a court of equity. Superior Oil & Gas Co. v. Mehlin, 25 Okla. 809, 108 Pac 545, 138 Am. St. Rep. 942; Hill Oil & Gas Co. v. White, 53 Okla. 748, 157 Pac. 710. Nor could any conduct of the plaintiff, after a forfeiture had been declared and the lease executed to the assignors of intervener, operate as an estoppel to affect the rights of Bearman in the premises, who took no part in such conduct, but on the contrary, notified plaintiff of the assignment by the Konora Oil Company of its lease to him, and that it would be held accountable for all oil and gas extracted from the premises before any production was obtained therefrom, and before a well was drilled.

It is urged by plaintiff that intervener's lease contains a surrender clause like to that in plaintiff's lease, and therefore cannot be enforced. Defendants have not sought to avoid said lease, nor declare a forfeiture thereon for nonpayment of rentals. This provision is for the benefit of the lessor, and he alone can take advantage of the same and declare the lease forfeited (Cohn v. Clark, 48 Okla. 500, 150 Pac. 467, L. R. A. 1916B, 686), and plaintiff cannot take advantage thereof to defeat the rights asserted by intervener (Angle v. C. & St. Paul R. Co., 151 U. S. 23, 14 Sup. Ct. 240, 38 L. Ed. 55; Bartley v. Phillips, 165 Pa. 325, 30 Atl. 842; Rice v. Manley, 66 N. Y. 82, 23 Am. Rep. 31; Weeghman v. Killifer, 215 Fed. 289, 131 C. C. A. 558, L. R. A. 1915A, 820). The lease under which intervener claims was granted upon the consideration of $80 cash in hand paid, supporting the first term of six months in which the lessee was given the right to drill, and this period had not expired at the time plaintiff obtained possession under the restraining order, and before the expiration of said six-month period, defendants entered into a supplemental agreement with intervener, that the time during which he should be kept out of possession and prevented from developing the premises under his lease by the plaintiff should be deducted from the period within which by the terms of his lease he would have to develop. No. 2055, Downey v. Gooch (D. C. Okla.) 240 Fed. 527. This would be so in the absence of such an agreement. Stahl v. Van Vleck, 53 Ohio St. 136, 41 N. E. 35.

Having reached the conclusion that the rentals under said lease were payable in advance, and that by reason of the failure of the plaintiff to pay said rentals in accordance with its agreement it was not entitled to the relief sought, the question remains what disposition shall be made of the case upon a remand to the trial court. It is a rule of equity that, "He who comes into equity, must come with clean hands," and another rule is, "He who has done iniquity, cannot have equity." Equity demands of suitors applying for relief that they come with clean hands and right conduct with reference to the matters concerning which they seek relief. In Michigan Pipe Co. v. Freemont, etc., Co., 111 Fed. 284, 49 C. C. A. 324, the rule is stated by Sanborn, J., as follows:

"A court of equity is the forum of conscience. Nothing but good faith, the obligations of duty, and reasonable diligence will move it to action. Its decree is the exercise of discretion, not of an arbitrary and fickle will, but of a wise judicial discretion controlled and guided by the established rules and principles of equity jurisprudence. One of the most salutary of these principles is expressed by the maxims, 'He who comes into

a court of equity must come with clean hands,' and 'He who has done iniquity cannot have equity.' A court of equity will leave to his remedy at law—will refuse to interfere to grant relief to—one who, in the matter or transactions concerning which he seeks its aid, has been wanting in good faith, honesty or righteous dealing. While in a proper case it acts upon the conscience of a defendant, to compel him to do that which is just and right, it repels from its precincts remediless the complainant who has been guilty of bad faith, fraud, or any unconscionable act in the transaction which forms the basis of his suit."

In Deweese v. Reinhard, 165 U. S. 386, 17 Sup. Ct. 340, 41 L. Ed. 757, Mr. Justice Brewer, speaking for the court, said:

"A court of equity acts only when and as conscience commands, and if the conduct of the plaintiff be offensive to the dictates of natural justice, then, whatever may be the rights he possesses and whatever use he may make of them in a court of law, he will be held remediless in a court of equity."

In Eaton on Equity, p. 74, it is said:

"Equity will refuse its aid in the enforcement of a contract where the plaintiff has practiced fraud on the defendant, and also where the plaintiff has been guilty of any unconscionable conduct which does not amount to legal fraud."

In Pomeroy, Equity Jurisprudence, sec. 398, the rule is stated thus:

"It is not alone fraud or illegality which will prevent a suitor from entering a court of equity; any really unconscionable conduct connected with the controversy to which he is a party will repel him from the forum whose very foundation is good conscience."

In Angle v. Chicago, etc., R. Co., supra, it is said:

"A wrongful use of the powers and processes of the court cannot be recognized as among the legitimate means of contest and competition."

Tested by these precepts, the plaintiff's conduct clearly shows that it is not entitled to the relief it seeks. It failed to pay the rentals when due, as it had previously done, and as required by its contract, after repeated demands for the payment thereof and after notice that its lease had been forfeited, and that another lease had been made. Not until a producing well had been brought in close to the leased premises did it deposit the past-due rentals in a bank to the credit of the lessor, and after said rentals had been rejected it sent its farm boss to take possession of the premises. Possession being denied by lessor, it then applied to a court of equity for a temporary injunction, making the false allegation that it was in possession of the premises, and had much timber thereon, and that defendants were interfering with its possession. Upon these allegations, which were untrue, and made for the purpose of obtaining the process of the court to enable it to regain possession, plaintiff caused a temporary writ to issue, restraining the defendants from interfering with its alleged possession. The trial court found that plaintiff sued out said writ for the purpose of obtaining possession. In view of these facts, from which it appears that plaintiff has not acted in good faith in an honest endeavor to perform its contract according to the terms thereof, but had abandoned any rights which it had under the lease, and that it was only after it appeared probable that the premises were valuable by reason of the producing well in the vicinity that it sought to assert rights which it had abandoned and which had been declared forfeited by the lessor; and that it imposed upon a court of equity by misrepresenting the true facts and by use of its process obtained a possession to which it was not entitled, and has under such possession so wrongfully obtained, asserted rights which had been forfeited, we say that plaintiff has not come into equity with clean hands, and has not done equity, and is not entitled to any relief.

The judgment is therefore reversed, and the cause remanded to the trial court, with instructions to ascertain amount of oil and gas produced by plaintiff from said premises, and to render judgment in favor of intervener therefor.

SHARP, C. J., and TURNER and THACKER, JJ., concur. KANE, J., concurs in conclusions.