ABELL ET AL., RESPONDENTS, *v.* BISHOP, APPELLANT.

(No. 6,537.)

(Submitted November 26, 1929. Decided January 29, 1930.)

[284 Pac. 525.]

480

*Mr. Donald Campbell* and *Mr. Warren Toole,* for Appellant, submitted a brief; *Mr. Campbell* argued the cause orally.

*Mr. Homer G. Murphy, Messrs. Belden & DeKalb* and *Mr. Merle C. Groene,* for Respondents, submitted a brief; *Mr. Murphy* and *Mr. H. Leonard DeKalb* argued the cause orally.

488

MR. JUSTICE MATTHEWS delivered the opinion of the court.

In February, 1928, Aurel J. Abell and Norma R. Thompson commenced action against J. B. Bishop for the cancellation of record of an oil and gas lease, declared forfeited in September, 1925, and for damages in the sum of $16,000, in addition to the statutory penalty for failure to release on demand.

The complaint alleges that Abell gave the required notice of forfeiture and thereafter transferred the land described in the lease to Thompson by warranty deed; that defendant failed to either commence a well within time or to pay delay rental when due. By answer, defendant denied that he defaulted, and affirmatively alleged transmission of the amount of delay rental within time, but that Abell's "agent the telegraph company" was unable to deliver the message on the day it was sent. The answer alleges that neither plaintiff is entitled to maintain the action, and sets up two pleas in bar. The affirmative matter in the answer is denied by reply.

The cause was tried to the court without a jury, and on the trial plaintiffs abandoned their claim for special damages. At the close of plaintiffs' case defendant moved for dismissal as to each of the plaintiffs separately and then moved for judgment of nonsuit as to each of them, and renewed these motions at the close of the case. Each motion was overruled. On the record made, the court made findings in favor of plaintiffs and thereon entered judgment declaring the lease "forfeited and terminated" and ordering its release and cancellation of record, but did not award plaintiffs the statutory penalty.

Defendant has appealed from the judgment, and, by appropriate specifications of error, presents for our determination the questions raised by his several motions made during the trial.

1. Counsel for defendant first contend that the action is predicated upon sections 6902, 6903 and 6904, Revised Codes 1921, and is, therefore, barred by the provisions of section 9032, Id., which provides that an action "upon a statute for a penalty or forfeiture" must be commenced within two

years, or by section 9033, Id., which prescribes a like limitation upon action "upon a liability created by statute other than a penalty or forfeiture."

This is not an action "upon a statute for a &ast; &ast; &ast; forfeiture," but an action wherein, a forfeiture having been declared, the plaintiffs seek to have the record cleared of the cloud on the title to the land existing by reason of the lease, valid on its face, remaining of record, and for the penalty provided for in section 6903, above (*Solberg* v. *Sunburst Oil & Gas Co.*, 70 Mont. 177, 225 Pac. 612; see, also, *Merk* v. *Bowery Min. Co.*, 31 Mont. 298, 78 Pac. 519, and note; 15 A. L. R. 604); the right to recover special damages pleaded having been waived at the beginning of the trial.

Section 6902 declares that, "when any oil, gas, or other mineral lease &ast; &ast; &ast; shall become forfeited, it shall be the duty of the lessee &ast; &ast; &ast; within sixty days from the date of the forfeiture &ast; &ast; &ast; to have such lease released from record &ast; &ast; &ast; ." This section declares the duty of the lessee, which duty attaches on forfeiture without action on the part of the lessor (*Steven* v. *Potlatch Oil & Refining Co.*, 80 Mont. 239, 260 Pac. 119) and, regardless of whether or not such a duty existed independent of the statute as a matter of law, it was imposed upon the lessee in the instant case by his agreement in the lease to execute and deliver to the lessor, in case of default, "a full discharge, satisfaction and release," which might be then recorded by the lessor. Had the lessee complied with this requirement of his contract, he might have had a complete defense to this action, as the parties had modified the statutory duty to that extent.

Section 6903 provides that, "should the owner of such lease neglect or refuse to execute a release as provided by this Act, then the owner of the leased premises may sue &ast; &ast; &ast; to obtain such release, and he may also recover &ast; &ast; &ast; the sum of one hundred dollars as damages, and all costs &ast; &ast; &ast; and &ast; &ast; &ast; any additional damages that the evidence in the case will warrant."

Section 6904 requires, as a condition precedent to maintaining the action, that the land owner serve written notice upon the lessee for cancellation at least twenty days prior to commencing action.

These provisions are remedial in their character and operation. (*Solberg* v. *Sunburst Oil & Gas Co.*, 73 Mont. 94, 235 Pac. 761; *Steven* v. *Potlatch Oil & Refining Co.*, above.)

The right to maintain an action to clear title from a cloud created by a recorded instrument, valid on its face, yet void or voidable as to the plaintiff's title, existed long prior to the enactment of sections 6902, 6903 and 6904, as Chapter 22, Laws of 1917 (sec. 8733, Rev. Codes 1921, enacted in 1895), and the right to bring an action to cancel a breached and forfeited oil lease, as a cloud on title, exists independent of any statute. (2 Thornton's Law of Oil & Gas, 1612.)

As to the applicability of such statutes of limitation as are here relied upon, the rule is "the phrase 'liability created by statute' means a liability which would not exist but for the statute, and does not extend to an action based upon defendant's alleged negligence in addition to a statutory liability, or to an action in which the element of agreement enters," and "statutes prescribing the period within which penal actions must be brought are not to be so construed as to defeat an action under a remedial statute." (37 C. J. 783 and 789.)

Although statutes of limitations, being founded on sound policy, so far as they are statutes of repose, are not to be evaded by construction, they cannot be made to apply to a cause of action not embraced within their intention by presenting it in a form of action to which, in terms, it is made applicable; the nature of the cause of action, not the form, determining the applicability of the statutes. (Endlich on Interpretation of Statutes, 476.) So, where a statute gives a right which existed theretofore and merely increases the damages by adding a penalty, it is not a penalty statute within the meaning of the statute of limitation as to penalty statutes. (*Brown* v. *Quincy, O. & K. C. Ry. Co.*, 198 Mo. App. 71, 199 S. W. 707; *Preece* v. *Oregon Short Line Ry. Co.*, 48 Utah, 551, 161 Pac. 40.)

Under the above rules, the most that could be said is that the limitation invoked might apply to the cause of action for the recovery of the penalty; it does not apply to the cause of action for the cancellation of the lease of record, and, therefore, the judgment herein is not vulnerable to the attack that the statute of limitations had run against the cause of action on which the judgment is based.

2. Counsel for defendant next assert that, as plaintiff Abell, as owner, made the demand for cancellation under the provisions of section 6904, and thereafter parted with title and plaintiff Thompson was the owner of the land in question at the time suit was commenced, but did not make the statutory demand, neither plaintiff was in a position to maintain the action.

Calling attention to the fact that, in the *Solberg Case* in 70 Mont. 177, 225 Pac. 612, this court likened the sections under consideration to statutes penalizing a mortgagee for failure to release a mortgage which has been paid, counsel cite *Capps* v. *United States Bond & Mortgage Co.,* (C. C. A.) 274 Fed. 357, and *Deeter* v. *Crossley,* 26 Iowa, 180, with certain decisions to the effect that a right of action to recover damages for injury to real property does not pass by conveyance of the land. None of these cases are persuasive here. In the *Capps Case* the action was solely for the recovery of a drastic penalty for failure to satisfy a mortgage of record; the court held that, as the statute gave the right to the mortgagor only, and the reason for its enactment was that an unsatisfied mortgage of record affected the pecuniary standing of the mortgagor, the penalty could not be recovered by the grantee of the land. It does not follow that such grantee could not sue to have the record cleared of the satisfied mortgage.

The *Deeter Case* does not support the position taken; the decision there is based on a showing that the mortgage was in fact satisfied before demand and suit, but the court declares: "We cannot concur with the learned judge * * * that

plaintiff having conveyed the land * * * to the defendant, this is a defense to an action for the penalty.''

As to the remaining cases cited, a grantee takes the land as he finds it at the time it is conveyed to him; consequently, an action for prior injury does not pass to him, but this situation is not found in the case at bar; here the cause of action for the penalty was, in effect, decided against the plaintiffs; the judgment is on the cause of action to rid the record of the cloud on title. As title was conveyed, after demand for release, by warranty deed, each of the plaintiffs has a remedial interest in this cause of action and might maintain such an action. (*Kersten* v. *Coleman,* 50 Mont. 82, 144 Pac. 1092; secs. 9067, 9077, Rev. Codes 1921; 47 C. J. 24, 25.) In view of the fact that plaintiff Thompson did not make the statutory demand, it may be that she alone might not have maintained the action under the statute, but, as plaintiff Abell was qualified to make the demand at the time it was made and joined in the action, the demands of the statute, as a prerequisite to maintaining the action, were complied with.

3. It is next contended that, as the primary relief provided for in the statute was not awarded, the court was without authority to award the incidental relief of cancellation.

This contention is based upon the statement made in *Solberg* v. *Sunburst Oil & Gas Co.,* 70 Mont. 177, 225 Pac. 612, 614, above, that ''it is manifest that, when the legislature enacted the sections on which this action is based * * * its primary object was to penalize the lessee for a failure to clear the record after forfeiture of the lease,'' by a special statutory action. This statement is not open to the construction placed upon it, i. e., that the purpose of the action is to recover the $100 penalty, and the cancellation of the instrument of record is but incidental to that purpose.

The primary object of the legislature in enacting the statute was to penalize the failure to perform the duty imposed by section 6902, but this was merely done in the hope that the imposition of the penalty would spur the delinquent lessee to diligence in performing the duty imposed. The primary ob-

ject of the *action* is not to recover the penalty, but to clear the record of the cloud on title, and, we apprehend, the plaintiff in such an action is not ordinarily concerned over the recovery, or failure to recover, the statutory penalty.

The purpose of the provisions of the statute is correctly stated in *Daley* v. *Torrey,* 71 Mont. 513, 230 Pac. 782, 783, where it is said: "The owner is authorized to maintain an appropriate action and combine therein (a) a cause of action for the cancellation of the lease; (b) a cause of action for the recovery of the statutory penalty; and (c) a cause of action for damages." This is the order of precedence and of importance set out in the statute itself. The complaint in such an action may, and does, unite three separate causes of action, and the fact that one thereof may be barred by the statute of limitations does not affect the authority of the court to enter judgment on another not so barred. The judgment was properly entered if the facts established warrant its entry.

4. The chief question raised is as to the correctness of the court's finding that defendant forfeited his lease. Proof of this fact is a prime requisite to judgment of cancellation of the record. (*Solberg* v. *Sunburst Oil & Gas Co.*—both cases—above.)

The record on this phase of the case discloses the following facts: In the lease, executed on March 4, 1925, the defendant agreed to "commence a well" on the leased premises "within three months from the date" thereof, and it then provided that, on his failure so to do, his rights should become forfeited, "unless at the expiration of said three months" he should elect to continue the lease in force "by paying quarterly in advance one dollar per acre until said well is commenced." Defendant was given the privilege of either paying the lieu rental to the lessor personally or depositing it to her credit in the First National Bank of Steamboat Springs, Colo. At the expiration of the first three months' period the defendant complied with the "unless" provision of the lease by paying the requisite amount on June 3, 1925.

On September 1 following, the lessor, through her attorneys, wired defendant from Steamboat Springs: "Wire rental to First National Bank here by September third or will forfeit lease." This demand was the result of certain correspondence in which defendant had urged that the lease was validated by drilling commenced on the ground by a stranger to the lease. The message was received by defendant at Great Falls on September 4 and he immediately caused to be transmitted a telegraphic money order for the amount of the lieu rental, drawn on the telegraph company's agent at Denver and payable to the designated bank. This order was received by the telegraph company at Steamboat Springs on September 4, but, as the bank was closed on account of a local holiday, it was not delivered until the 5th; it was then cleared through Denver and the money received and placed to Abell's credit on the 8th; she was notified, but refused to accept the payment. On December 3 defendant remitted the amount of lieu rental for the fourth period to the designated bank, but this payment was also rejected, and both sums were thereafter returned to defendant on his demand.

It will be noted that both parties to the lease had, prior to the commencement of the action, construed the lease as requiring the payment of the delay rental on the 3d of the appropriate month, as "at the expiration" of the period then closing, which was manifestly in accordance with the letter of the agreement; the defendant by payment on June 3 and tender of a like amount on December 3; the plaintiff Abell by demand that payment for the third period be deposited on September 3.

The cause was tried on the theory, stated by counsel for plaintiff in opening, that, under the express provisions of the lease, each period began on the fourth day of the month and expired on the third day of the third month following, and counsel consistently urge that theory here. Accepting this statement as the position of the plaintiffs, and without challenging the same on technical grounds, counsel for defendant contended, and now contend, that the method of computation

prescribed in section 10707, Revised Codes of 1921, i. e., by excluding the first day and including the last, applies, and therefore the third period did not expire until September 4, at midnight, but that, as it is not presumed that parties will be up for the transaction of business, or a bank open to receive deposits at midnight, the defendant had a reasonable time on September 5 in which to make the deposit; and, further, that, as September 4 was a holiday, that day should be excluded, thus giving defendant all of the 5th in which to make deposit, and, as by her demand Abell had made the telegraph company her agent, the delivery of the telegraphic money order on that day was sufficient, although the actual money was not deposited until the 8th, her action being a waiver of payment in the manner prescribed by the lease.

The acts of the parties who made a lease, and knew its purpose, are a forceful clue to get at the meaning. (*Caperton's Admr.* v. *Caperton's Heirs*, 36 W. Va. 479, 15 S. E. 257.)

What counsel for defendant term "the peculiar provisions" of the lease require defendant "to commence a well * * * within three months from * * * " March 4, on pain of forfeiture, "unless at the expiration of said three months" he shall pay "in advance" each quarter the required delay rental. This is not a covenant to pay rent, but only a clause giving the lessee the privilege of keeping the lease alive and operative without drilling—but an option to extend the lease, otherwise about to expire, by paying for the privilege in the manner prescribed. Failure to pay was not a violation of any provision of the lease, as the lessee did not agree to pay. (*Smith* v. *South Penn Oil Co.*, 59 W. Va. 204, 53 S. E. 152; *Van Etten* v. *Kelly*, 66 Ohio St. 605, 64 N. E. 560.) The rules as to option agreements, rather than those for the construction of covenants in a contract, should therefore be applied. (*Central Ohio Natural Gas & Fuel Co.* v. *Eckert*, 70 Ohio St. 127, 71 N. E. 281.)

In considering the effect of this specific requirement we must bear in mind that, if the intention of the parties is

clearly expressed, the terms of the instrument will control over all mere rules of construction (*Butte Water Co.* v. *City of Butte,* 48 Mont. 386, 138 Pac. 195; *Ming* v. *Pratt,* 22 Mont. 262, 56 Pac. 279; *Lehrkind* v. *McDonnell,* 51 Mont. 343, 153 Pac. 1012), and that, owing to the peculiar product to be produced and the fact that the purpose of such leases is to have the land explored and tested for oil, rather than to yield ground rental, it has been found necessary to guard the rights of the land owners, as well as the public, by numerous covenants and provisions, some of the most stringent kind, to prevent lands from being burdened by unexecuted and profitless leases, and the forfeiture for nondevelopment is essential to private and public interest in relation to the use and alienation of property (1 Thornton's Law of Oil and Gas, 596); consequently, the general rule that forfeitures are not favored in the law does not apply to leases for the purpose of having lands explored for oil or gas; rather, in this class of cases, forfeitures are favored (*McNamer Realty Co.* v. *Sunburst Oil & Gas Co.,* 76 Mont. 332, 247 Pac. 166), and such provisions as that under consideration are to be construed liberally in favor of the lessor, bound thereby, and strictly against the lessee who is not bound. Time is of the essence of the contract, and forfeiture follows immediately on default. (*McDaniel* v. *Hager-Stevenson Oil Co.,* 75 Mont. 356, 243 Pac. 582.) Under such a provision, these rules are applied both at law and in equity. (2 Page on Contracts, 1792.)

The phrase "at the expiration of" defines a limit of time; it marks the close of a period after which the right to act is forever gone; it is a "vital, mandatory and controlling" provision; it expresses the intention of the parties that the lessee's option shall be exercised when his rights would otherwise cease, and not thereafter. However, the word "at" is said to be equivalent to "in or near," and the provision is construed, not to require action "at the very *punctum temporis*" when the term expires, but within a reasonable time before, not after, that final moment. (*People ex rel. Knight* v. *Blanding,* 63 Cal. 333; *Lord Ranelagh* v. *Melton,* 2 Drew & S. 277,

63 Eng. Reprint, 627; *Hollman* v. *Conlon,* 143 Mo. 369, 45 S. W. 275; *Ferree* v. *Moquin etc. Coal Co.,* 29 Misc. Rep. 624, 61 N. Y. Supp. 120; *M. Fine Realty Co.* v. *City of New York,* 53 Misc. Rep. 246, 103 N. Y. Supp. 115; *I. X. L. Furniture etc. House* v. *Berets,* 32 Utah, 454, 91 Pac. 279, 282; *Tilton* v. *Sterling Coal & Coke Co.,* 28 Utah, 173, 107 Am. St. Rep. 689, 77 Pac. 758.) The lessor is entitled to know, at the moment the lease expires, whether he still has a tenant or is in a position to lease to a new tenant. (*I. X. L. Furniture etc. House* v. *Berets,* above.)

In construing a contract it is only by adopting a fiction for convenience that it can be said that the first day of a given period is to be excluded and the last included, thus extending the period one day; the first day of a period is as much a part thereof as any other day within the period; for example, a month begins on the first day thereof and ends on the last. Likewise, the "period" of minority always ends on the last day preceding the twenty-first anniversary of birth. (1 Blackstone's Commentaries, 462; *Ross* v. *Morrow,* 85 Tex. 172, 16 L. R. A. 542, 19 S. W. 1090; *Ex parte Wood,* 5 Cal. App. 471, 90 Pac 961.)

Where, as in the lease under consideration, the parties have declared in plain and unambiguous language that forfeiture follows failure to pay "in advance" "at the expiration" of a stated period, no mere canon of construction can be resorted to to overcome the clear intention of the parties.

Under the lease and the foregoing decisions, the expiration date was September 3, 1925, and failure to pay on or before midnight of that day warranted the declaration of forfeiture; the fact that the *"punctum temporis"* when the period expired was midnight did not extend the time into the following day. This conclusion is fortified by reasoning and declarations found in the following cases: *I. X. L. Furniture etc. House* v. *Berets,* above; *Adams* v. *Dunn,* 64 Pa. Super. Ct. 303; *Nathan* v. *Sinclair,* 65 Pa. Super. Ct. 237;

*Darling* v. *Hoban,* 53 Mich. 599, 19 N. W. 545; *Rowe* v. *Atlas Oil Co.,* 147 La. 37, 84 South. 485; *Dill* v. *Fraze,* 169 Ind. 53, 79 N. E. 972; *Mason* v *Payne,* 47 Mo. 517; *Magoffin* v. *Holt,* 1 Duv. (62 Ky.) 95; *Renoud* v. *Daskam,* 34 Conn. 512; *Guyer* v. *Warren,* 175 Ill. 328, 51 N. E. 580. See, also, as to the actual time of expiration of the period: *Herman* v. *Winter,* 20 S. D. 196, 105 N. W. 457, and *Gray* v. *Maier & Zobelien Brewery Co.,* 2 Cal. App. 653, 84 Pac. 280.

But even if the rule were otherwise, and the defendant could have made an effective payment on September 4 or 5, the judgment must be affirmed, as payment was not actually made until the 8th.

Abell's telegram of September 1 may be paraphrased to ▮▮▮▮▮ read: "You may wire the rental to the First National Bank here, provided you wire it by September third." The lessor was under no obligation to advise the defendant as to when payment must be made, and, as the rental was not wired on the 3d, the message may be entirely disregarded; it had no effect whatever. When, therefore, the defendant sent his telegraphic money order to the bank on the 4th, he made the telegraph company his agent (*Bond* v. *Hurd,* 31 Mont. 314, 3 Ann. Cas. 566, 78 Pac. 579), and the depository bank, being authorized to pay money orders transmitted through the telegraph company, as set out in the agreed statement of facts, was the agent of the telegraph company and subagent of the defendant for that purpose; indeed, the very message sent so provides, for it is therein stated that, "when the company has no office at destination authorized to pay money, it shall * * * be the agent of the sender * * * to contract on the sender's behalf with * * * any bank * * * for the final payment of this order." As the agent of the land owner for the acceptance of payment of the rental, the bank was not authorized to receive in payment anything but cash. (*Case* v. *Kramer,* 34 Mont. 142, 85 Pac. 787; 2 C. J. 628.) The attempted payment was not therefore, received by the depository bank until September 8.

Having arrived at the above conclusion, it becomes unnecessary to consider the remaining questions raised by counsel for defendant.

The judgment is affirmed.

Mr. Chief Justice Callaway, Associate Justices Galen and Angstman, and Honorable C. P. Pomeroy, District Judge, sitting in place of Mr. Justice Ford, disqualified, concur.