COOK–REYNOLDS CO., APPELLANT, *v.* WILSON,
RESPONDENT.

(No. 5,138.)

(Submitted April 7, 1923. Decided April 26, 1923.)

[214 Pac. 1104.]

*Injunction—Landlord and Tenant—Lease of Farm Lands—*
*"Cropper"—"Tenant"—Counterclaims—When Improper.*

Pleading—Counterclaims—When Improper.
    1.  A counterclaim which does not in any manner diminish or de-
feat plaintiff's recovery, or which is not in existence and matured
prior to the filing of the complaint, is improper.

Same—Injunction—Improper Counterclaim.
    2.  In an action for an injunction to restrain defendant from har-
vesting a crop of volunteer wheat, a counterclaim for defendant's
share of the crop which was harvested by plaintiff while the injunc-
tion was in effect was not allowable, since it did not diminish or
defeat plaintiff's recovery and was not in existence at the time
the complaint was filed.

Landlord and Tenant—Farm Lands—"Cropper"—"Tenant."
    3.  The difference between a tenant of farm land and a cropper
*held* to be: A *tenant* has an estate in the land for the term of
the lease and a right of property in the crop, he dividing the crop
if a share thereof constitutes the rent, possession of the whole
being in him; a *cropper* has no estate in the land and his posses-
sion of the crop is that of a servant, the possession in law being
that of the land owner, who must set off to the cropper his share.

Same—Contract for Payment of Rent in Kind a "Lease" and not a
"Cropping Agreement."
    4.  A contract of lease of farm lands whereby plaintiff demised,
leased and farm-let the property to defendant in consideration of
rents to be paid in kind for a definite term, defendant being en-
titled to the possession of the land and crops, and no provision
being made under which he was to deliver any part of the crop
to plaintiff, *held* to have been a lease and not a cropping agree-
ment, under which defendant became the owner of a volunteer crop,
notwithstanding a provision reserving title to the crops in plaintiff
until division thereof, such reservation being susceptible to the con-
struction of a lien to secure plaintiff of its share of the crops.

*Appeal from District Court, Fergus County; Rudolf Von
Tobel, Judge.*

---

   3.  Agreements for the cultivation of land on the shares, see notes in
37 Am. Dec. 317; 37 Am. Rep. 609.

   Distinction between "tenant" and "cropper," see note in 98 Am. St.
Rep. 953.

ACTION by the Cook-Reynolds Company against Ed Wilson. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

*Messrs. Belden & De Kalb,* for Appellant, submitted a brief; *Mr. H. Leonard De Kalb* argued the cause orally.

It is a general rule that where the occupant of land covenants to deliver to the owner a portion of the crops, the agreement is held to be a cropping contract, a letting upon shares. If the agreement contains terms which by themselves would import a lease and other terms which provide for a division of the crops, and it is doubtful which it is—a lease or a cropping contract—it will be deemed a cropping contract, by reason of a division of the crops. (*Putnam* v. *Wise,* 1 Hill (N. Y.), 234, 37 Am. Dec. 309; *Caswell* v. *District,* 15 Wend. (N. Y.) 379; *Harrower* v. *Heath,* 19 Barb. (N. Y.) 337; *Walls* v. *Preston,* 25 Cal. 61; *Cull* v. *San Francisco etc. Co.,* 124 Cal. 591, 57 Pac. 456; *Romero* v. *Dalton,* 2 Ariz. 210, 11 Pac. 863; *Frame's Estate* v. *Frame,* 48 Ind. App. 481, 96 N. E. 35.)

In the case of *Porter* v. *Vail,* 148 Ark. 642, 231 S. W. 3, where a written contract for the renting of land provided the landlord was to receive one-third and the tenant was to receive two-thirds, the parties to furnish the seed in the same proportion, the court said: "Reading the contract as an entirety it is quite apparent that the parties had in contemplation crops to be planted and cultivated, not volunteer crops. The contract did not embrace uncultivated grass grown on lands which should have been cultivated." In other words, even construing the contract as a lease, Wilson was not entitled to the crop.

*Messrs. Cheadle & Cheadle* and *Mr. Charles W. Buntin,* for Respondent, submitted a brief; *Mr. E. K. Cheadle* argued the cause orally.

The respondent was not employed by the appellant to labor on the land, and to receive two-thirds of the crop as pay for his labor, but it clearly appears that the appellant leased the

respondent the land, and that the respondent agreed to pay him for the use of the said premises, one-third of the crop grown thereon. This negatives the theory that the respondent was a mere cropper. "A cropper is one who having no interest in the land works it in consideration of receiving a portion of the crop for his labor." (*Romero* v. *Dalton,* 2 Ariz. 210, 11 Pac. 863, 864.) This is not the case in the suit at bar. The appellant, the landlord, was to receive a portion of the crop for leasing the land to the respondent. The relation is precisely the opposite of that which exists between cropper and land owner. Definitions of the word "cropper" are: "A laborer receiving pay in a share of the crop." (*Harrison* v. *Ricks,* 71 N. C. 7, 11.) "One hired to work land and to be compensated by a share of the produce." (*Steel* v. *Frick,* 56 Pa. St. 172, 175.) "A person hired by the land owner to cultivate the land, receiving for his compensation a portion of the crops raised." (*Wood* v. *Garrison* (Ky.), 62 S. W. 728, 729.) "One who raises a crop upon land of another under a contract to raise the crop for a particular part of it." (*Burgie* v. *Davis,* 34 Ark. 179.) "One who cultivates the land of another in consideration of the receipt by him of a portion of the crop raised." (*Maltbie* v. *Olds,* 88 Conn. 633, 637, 92 Atl. 403.)

Every definition of a cropper implies merely the relation of laborer to employer and it is clearly distinguished from the relation of landlord and tenant. In this case the relation of the respondent to the appellant is that of tenant to landlord. The respondent received a leasehold interest in the land and for it agreed to pay, and did pay, one-third of all the crop raised. (See, also, *Harrison* v. *Ricks,* 71 N. C. 7, 10; *Appling* v. *Odom,* 46 Ga. 583, 584; *Gray* v. *Robinson* (Ariz.), 33 Pac. 712; *Walls* v. *Preston,* 25 Cal. 59.)

MR. COMMISSIONER BENNETT prepared the opinion for the court.

In September, 1919, plaintiff, the Cook-Reynolds Company, a corporation, entered into a contract with defendant, Ed.

Wilson, purporting to lease to defendant certain lands therein described. At the time of the execution of the contract, there was a certain tract which was described in the instrument as "tract No. 3," and which had been theretofore cultivated by a former tenant of plaintiff, who had grown wheat thereon. Unknown to the parties to this action at the time of the execution of the contract, the harvesting of the former tenant had resulted in reseeding the land and in the spring of 1920 this seed germinated and resulted in a volunteer crop of wheat springing up on the tract. Plaintiff claimed the entire crop, and upon the refusal of the defendant to permit it to harvest the crop, this action was commenced to enjoin defendant from interfering with its harvesting operations. An injunction was issued, and while it was in effect plaintiff harvested and marketed the crop. Defendant answered, claiming a share of the crop according to the terms of the written contract, and pleaded a counterclaim for the value of his share. After reply, the cause came on for trial before the court sitting without a jury. Testimony was taken, findings of fact and conclusions were made, and an affirmative judgment was entered for defendant on his counterclaim for an amount found to be two-thirds of the net proceeds of the wheat. Plaintiff appeals from the judgment thus entered.

Among plaintiff's contentions is one to the effect that the alleged counterclaim was not a proper one in the action and [1, 2] that the court erred in entering judgment thereon. We are constrained to hold that this contention is correct. The counterclaim was not allowable for two reasons: (1) The action being for an injunction and the counterclaim seeking an affirmative judgment, the counterclaim did not in any manner tend to diminish or defeat plaintiff's recovery. That such is a requisite of a counterclaim is unequivocally stated in section 9138, Revised Codes of 1921. (2) The cause of action which defendant attempted to make the basis of the counterclaim was not in existence at the time of the commencement of the action. It must appear that the counterclaim was in existence and

matured prior to the filing of the complaint. (See *Scott* v. *Wagoner*, 48 Mont. 536, L. R. A. 1916C, 491, 139 Pac. 454; *Hammond* v. *Thompson*, 54 Mont. 609, 173 Pac. 229.) The entry of the affirmative judgment in this action was therefore erroneous.

On the other hand, we are confronted with the question of whether or not, in any event, plaintiff was entitled to recover. Plaintiff insists that the contract entered into between it and defendant was not a lease but a "cropping agreement," and under it defendant was only entitled to share in the crops specifically mentioned therein.

We do not so view the situation. The instrument stated [3, 4] that "for and in consideration of the rents and covenants  *  *  * mentioned" the plaintiff "has demised, leased and farm let and does  *  *  * demise, lease and farm let unto the" defendant certain lands therein described, including the entire tract from which the volunteer crop was harvested, for a definite term. It was specified that certain work was to be done by defendant and certain crops were to be planted. In particular, it was specified that defendant was to plow and seed a 100-acre tract out of a larger tract designated as "tract No. 3" consisting of 231 acres. It was also agreed that, "in consideration of the aforesaid leasing," the defendant was to "deliver" to the plaintiff one-third of the grain crops grown on the "leased premises" during the season of 1920, and "in consideration of the aforesaid leasing deliver" one-half of the hay grown on the premises during the year 1920. Mention was made of a grazing lease between plaintiff and another which expired April 1, 1920, and notice was taken of that lease. It was also provided that defendant was to have the use and occupancy of all buildings except a garage, which was to be removed by plaintiff, and a stock-shed, to the use of which the grazing lessee was entitled during his term. Certain provisions were made for repairs. There was an agreement to the effect that, if defendant did not cultivate the lands in accordance with the terms of the contract, plaintiff,

at its election, could enter upon the premises and plow such lands as were not being so cultivated. Provision was made for proper farming and disposition of the crops. There was a paragraph which stated: "That the ownership of all grain crops grown on the herein leased premises shall be and remain the property of the first party until the division of said crops is made by the parties hereto and the first party has received the share it is entitled to receive." Permission was granted plaintiff to enter for the purpose of inspection. There were covenants against subletting, for the surrender of the premises upon expiration providing that time was of the essence, and a forfeiture clause. The last specifically provided for the right to "re-enter" upon nonperformance by defendant "without such re-entering working a forfeiture of the rents to be paid."

The distinction between leasing and cropping agreements has never been passed upon by this court. There are, however, many cases from other jurisdictions wherein the question of whether or not a contract was a leasing or a cropping agreement was involved. It is apparent that the various courts are not entirely in harmony in their conceptions of the rules. This situation, however, is largely accounted for by the variety of language which has been employed in stating the contracts which have been under consideration. The rights which flow from a particular contract must always be determined by the language of that contract.

There are, however, certain general rules which have been applied which may either aid in determining or actually determine the question. We believe the concise statement found in 8 R. C. L. 374, correctly states such general rule: "The difference between a cropper and a tenant is that a tenant has an estate in the land for the term, and consequently he has a right of property in the crop. If he pays a share of the crop for rents, it is he who divides the crop and turns over to the land owner his share, and until such division the right of property and of possession in the whole is his. A cropper has no estate

in the land, and although he has in some sense the possession of the crop, it is only that of a servant, and the possession is in law that of the land owner, who must set off to the cropper his share.''

We have, in the instant case, a contract which, with one possible exception, the language shows clearly was a lease. The plaintiff ''demised, leased and farm let'' the property to the defendant in consideration of ''rents'' to be paid in kind. The term was definitely fixed. The rents were specified. Subletting was prohibited. Permission was granted plaintiff to enter for the purpose of inspection. The last clause provided that re-entry by the plaintiff for nonperformance should not cause a forfeiture of the ''rents to be paid.'' Under the contract defendant was entitled to the possession of the land and crops. There is nowhere an indication that plaintiff was to deliver to defendant anything as wages or compensation. The only possible inconsistent provision is the one providing for reservation of title to the crops in plaintiff. Construing a contract to farm on shares which had great similarity to the one at bar, but which did not use the language of a lease, such as the contract under consideration did, the supreme court of Minnesota, after holding that the parties were tenants in common of the crops, went on to discuss a provision that, until division, the title and possession of all crops was to remain in the land owner. That court said: ''The provision that until division the title and possession should be and remain in the plaintiff, if given the effects claimed for it by him, would be as repugnant to both the letter and spirit of the other provisions in the contract as would be a provision that defendant should have no right to enter upon the premises at all.  *  *  * The only effect that can be given to that provision consistent with the .general purpose, as well as the other express provisions, of the contract, is that plaintiff should have the title, and, when necessary, the right to the possession, of the crops, as security for the performance of the terms of the contract by the defendant.'' (*Strangeway* v. *Eiseman*, 68 Minn. 398,

71 N. W. 617.)   In the contract involved in the case at bar, it will be noted that the title to only a portion of the crops was to remain in plaintiff.

If it can be said that the title reservation is apparently inconsistent with the remainder of the contract, it is our duty, under section 7543, Revised Codes of 1921, to reconcile the repugnancies.   We agree with the Minnesota court that the only effect that can be given to the provision for title to remain in plaintiff is to construe it as providing a lien to secure delivery to plaintiff of its share of the grain crops.   The clause itself uses the language "until division and the first party has received the share it is entitled to receive."   Regardless of the rules as to repugnancies, we are inclined to believe that such clause was consistent with the leasing provisions.

Viewed in this light, we have a lease which is not distinguishable from the one the supreme court of Minnesota had under consideration in the case of *State* v. *Municipal Court of City of Crookston,* 123 Minn. 377, 143 N. W. 978, of which that court said: "Clearly the contract is a lease."

Such being the case, it follows that, subject to the lien as provided in the contract, the defendant was the owner of the volunteer crop as one of the products of the leased premises and that the refusal to plaintiff by defendant of permission to harvest the crop did not give rise to any cause of action in plaintiff's favor.

Under this view all other questions presented become immaterial.   We therefore recommend that the judgment on the counterclaim be reversed and the cause remanded, with directions to the trial court to dismiss both the complaint and counterclaim, each party to pay his own costs on appeal.

PER CURIAM: For the reasons given in the foregoing opinion, the judgment on the counterclaim is reversed and the cause is remanded to the district court, with directions to dismiss both the complaint and counterclaim, each party to pay his own costs on appeal.