WELLS–DICKEY CO., APPELLANT, *v.* EMBODY, SHERIFF, RESPONDENT.

(No. 6,284.)

(Submitted March 14, 1928. Decided March 29, 1928.)

[266 Pac. 869.]

*Conversion of Grain—Farm Mortgages—Landlord and Tenant —"Croppers"—Title to Crops in Landlord—Pleading and Practice—Complaint—Conclusions — Surplusage—Judgment-roll—Evidence—Corporations—Principal and Agent.*

Pleading and Practice—Trial—Objection to Sufficiency of Complaint Saves Question for All Purposes—Appeal—When Pleading Upheld. 1. By the general objection made by defendant to the introduction of any testimony at the beginning of trial on the ground that the complaint did not state a cause of action, the question of the

---

1. See 21 Cal. Jur. 252; 21 R. C. L. 605.

sufficiency of the pleading was saved for all purposes, and in determining that question on appeal matters of form will be disregarded as well as irrelevant or redundant allegations, and if on any view it states a cause of action, the pleading will be upheld.

Pleading—Complaint—When Sufficient.

2. If the complaint states ultimate facts and not conclusions of law drawn from facts, in ordinary and concise language, so that the man on the street may know what is charged therein, it is immune to a general demurrer or to an objection to the introduction of testimony on the ground that it does not state a cause of action.

Conversion — Complaint — Sufficiency — Conclusions — Surplusage Disregarded.

3. Where plaintiff mortgagee in an action for the conversion of wheat in his complaint had alleged that the mortgagor had failed to make the payments required by the terms of his mortgage, copy of which was attached thereto—an allegation of fact—the pleading was not rendered insufficient by the subsequent redundant averment in the nature of a conclusion to the effect that the mortgagor prior to a certain date was in default on the payments required by the mortgage. (See par. 1 above.)

Complaint—Ambiguity and Indefiniteness—Question may be Raised by Special Demurrer Only.

4. Ambiguous or indefinite allegations in a complaint may be taken advantage of only by special demurrer, not by a general objection to the introduction of any testimony.

Conversion of Grain—Complaint—Sufficiency.

5. Where the complaint in an action in conversion of wheat averred that the premises were rented to a tenant for a period ending on a given day and year under a lease providing for the delivery to plaintiff of one-fourth of the crops raised during that year, it was sufficient to show that the crop in question was raised under the lease, as against the objection that it did not appear when the lease began and when the crop was harvested.

Pleading—Allegations of Conclusions may be Disregarded, When.

6. Allegations in the nature of conclusions not essential to the statement of a cause of action may be disregarded as surplusage and the complaint upheld if there be other averments properly pleaded covering the same subject.

Conversion of Grain—Action by Mortgagee Against Third Person— Judgment-roll in Foreclosure Suit Prima Facie Evidence of Mortgagor's Default.

7. That a judgment debtor was indebted to his creditor at a given time may be established, prima facie at least, in an action by the creditor against a third person, by the judgment in favor of the creditor; hence in an action by a mortgagee of farm lands for the conversion of wheat grown on the mortgaged land, the judgment-roll in the foreclosure suit commenced prior to the time the mortgagee took possession under the terms of the mortgage was sufficient evidence, in the absence of proof to the contrary, that the mortgagor was in default at the time the grain was taken.

---

4. See 21 Cal. Jur. 102, 108; 21 R. C. L. 520.

Principal and Agent—Proof of Agency—Conclusion of Agent Incompetent Evidence.

8. To prove agency it is not competent for the agent to state his opinion, but where no objection was made to a question calling for his conclusion on that subject, his answer must be considered on appeal as establishing his agency.

Findings—Conflict in Evidence must be Real to Render Findings Conclusive on Appeal.

9. The rule that a finding of the court will not be disturbed on appeal if it was based on conflicting evidence has no application where an agent's testimony that his acts were those of his principal was apparently contradicted by the recitals of an instrument which inadvertently designated the agent as principal, the agent's testimony in explanation clearly showing that what he did was done in the principal's interest.

Corporations—Acts of Assistant Manager Presumed to be Acts of Corporation—Agency.

10. The rule that a contract executed by the general manager of a corporation will be presumed to be that of the corporation until the contrary is made to appear, particularly so where necessary to the conduct of the ordinary affairs of the corporation, his implied powers being co-extensive with the general scope of its business, is applicable to the manager's assistant; hence the actions of an assistant manager of a corporation managing the affairs of a mortgagee, in executing a contract with the mortgagor's tenant after default, were not objectionable as falling under the rule that in the absence of authority, express or implied, to employ a subagent, the trust committed to the agent is personal and cannot be delegated.

Conversion—Landlord and Tenant—When Tenant a "Cropper"—Possession of Crops in Landlord.

11. A contract between a mortgagee of farm lands on the mortgagor's default whereby the former rented the lands to a tenant under the condition that possession and right to possession of the lands and title to the crops grown were to remain in the mortgagee, who on completion of the contract would deliver a certain portion of the crops to the producer as payment for his labor and investment, was a contract of employment, the producer being no more than a cropper whose possession was that of his employer, and, until division of the crops was made, title to them remained in the employer; hence until division the mortgagee was in possession of the crops and could properly sue the attaching sheriff in an action for their conversion.

Farm Mortgages—When Title to Mortgaged Crops in Mortgagee of Land.

12. Where a mortgagee of farm lands upon default of the mortgagor took possession under the terms of the mortgage immediately after commencing foreclosure proceedings, thus imposing a lien upon the crops to be produced thereon as further security for the payment of the mortgage debt, and remained in actual and continued possession, renting the premises prior to decretal sale, he acquired title to the crops in existence at the time of such sale; the contention of defendant in an action for the conversion of

8. See 1 Cal. Jur. 698; 21 R. C. L. 821.

11. Croppers, see note in 98 Am. St. Rep. 953. See, also, 8 Cal. Jur. 712; 8 R. C. L. 373.

[82 Mont. 150.]

the crops that by commencing foreclosure proceedings the mortgagee waived his right to take possession under the mortgage being without merit.

[1]    Appeal and Error, 4 C. J., sec. 3130, p. 1136, n. 36.    Pleading, 31 Cyc., p. 759, n. 93, p. 760, n. 96, p. 761, n. 98 New.
[2]    Pleading, 31 Cyc., p. 289, n. 61, p. 761, n. 3.
[3]    Pleading, 31 Cyc., p. 51, n. 71, p. 282, n. 17.
[4, 5]    Mortgages, 41 C. J., sec. 641, p. 652, n. 1.    Pleading, 31 Cyc., p. 50, n. 69.
[6]    Pleading, 31 Cyc., p. 68, n. 76.
[7]    Judgments, 34 C. J., sec. 1484, p. 1052, n. 20; sec. 1486, p. 1053, n. 34.
[8]    Agency, 2 C. J., sec. 330, p. 677, n. 59; sec. 691, p. 935, n. 21. Appeal and Error, 4 C. J., sec. 2580, p. 679, n. 42.    Evidence, 22 C. J., sec. 731, p. 635, n. 36.
[9]    Appeal and Error, 4 C. J., sec. 2856, p. 886, n. 52.
[10]    Assistant, 5 C. J., p. 1328, n. 3, 5.    Corporations, 14a C. J., sec. 1862, p. 95, n. 16, 17; sec. 2141, p. 294, n. 28; sec. 2215, p. 354, n. 78; sec. 2248, p. 395, n. 98.
[11]    Contracts, 13 C. J., sec. 482, p. 521, n. 18.    Landlord and Tenant, 35 C. J., sec. 607, p. 1248, n. 22.    Mortgages, 41 C. J., sec. 578, p. 610, n. 83; sec. 601, p. 625, n. 95.
[12]    Mortgages, 41 C. J., sec. 601, p. 625, n. 91.

*Appeal from District Court, Pondera County; John J. Greene, Judge.*

ACTION by the Wells-Dickey Company against C. M. Embody, Sheriff of Pondera County. Judgment for defendant and plaintiff appeals. Reversed and remanded, with direction.

*Messrs. Maddox & Church,* for 'Appellant, submitted a brief; *Mr. Fletcher Maddox* argued the cause orally.

*Messrs. Arnot & Doyle,* for Respondent, submitted a brief; *Mr. C. A. Spaulding,* of Counsel, argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

On motion for a rehearing, counsel for defendant have called our attention to the fact, not mentioned in their original brief, and entirely overlooked by the court, that before any testimony was introduced the defendant objected to the introduction of any testimony on the ground that the complaint

does not state facts sufficient to constitute a cause of action. For this reason the opinion promulgated March 29, 1928, is withdrawn, and the following opinion substituted therefor:

The plaintiff, Wells-Dickey Company, a Minnesota corporation, has appealed from a judgment entered in favor of the defendant, C. M. Embody, as sheriff of Pondera county, in an action for the conversion of certain wheat claimed as the property of the plaintiff.

The facts upon which plaintiff bases its claim of title to the wheat are substantially as follows: In 1919 one Claude Scott executed and delivered to plaintiff a series of notes, for borrowed money, falling due yearly, beginning with November 4, 1919, and as security for the payment thereof, gave plaintiff a mortgage on his farm in Pondera county. The mortgage was duly recorded. It provides that, on default in payment of any one of the notes secured, the mortgagee "is authorized and empowered to take immediate possession" of the mortgaged premises and "rent the same."

Scott left the state, and on April 4, 1924, while residing in Wyoming, entered into a written contract with one O'Brien, by the terms of which the latter agreed to crop the farm for the seasons of 1924 and 1925, and under which O'Brien raised a crop in 1924, and commenced planting a crop of wheat in the spring of 1925. On April 15 of the latter year, plaintiff commenced foreclosure proceedings on its mortgage, alleging that Scott was then in default in payment of one of the series of notes, and on May 4 one Abbey, assistant manager of the O. M. Corwin Company, a corporation having charge of plaintiff's affairs in this state, went upon the land and took possession in the name and on behalf of the plaintiff, notifying O'Brien that he did so because Scott was in default under the terms of the mortgage. Abbey then entered into an agreement with O'Brien to crop the farm for the year 1925, but, instead of contracting in the name of plaintiff, did so in the name of the Corwin Company, as owner or agent for the owner of the land.

The foreclosure proceeding culminated in a sheriff's certificate of sale, issued on July 21, 1925, to plaintiff, as the purchaser of the land on decretal sale. O'Brien harvested the crop in September, threshed it in October, and stored it in granaries on the land. The complaint alleges that a division was made of the wheat at the time it was stored, and a one-fourth thereof was then set apart, "subject to the order and control of the plaintiff and as its property," and that in February, 1926, the defendant wrongfully entered upon the premises, seized the wheat, sold it and converted the proceeds to his own use.

The defendant sought to justify the taking by alleging and proving that on September 9, while the wheat was lying in the field in shocks, under and by virtue of a writ of attachment issued in an action against Scott by one of his creditors, he, as sheriff, levied upon "all of the right, title, and interest" of Scott in the wheat "by posting six copies of notice of attachment. * * * "

The proof shows that, about February 1, 1926, defendant ordered O'Brien to deposit one-fourth of the crop of wheat in an elevator and have receipts therefor issued to defendant as sheriff, which order was complied with, and the wheat was thereafter sold on execution by the sheriff. Before the sale was made E. W. Heule, manager of the Corwin Company, filed a third party claim with the sheriff, asserting that the wheat was the property of the company.

The cause was tried to the court sitting without a jury, and, in rendering judgment in favor of defendant, the court merely declared that the plaintiff was not the owner of, nor entitled to the possession of, the wheat during the period from May 4, 1925, to February 1, 1926, and therefore not entitled to prevail in the action.

Plaintiff predicates error upon the making of the "findings" and the entry of judgment in favor of defendant, and asserts that its ownership of the wheat seized was established under either one of two theories: First, as the landlord's share of

the crop produced after plaintiff had taken possession of the land and rented it to O'Brien pursuant to the authority granted by the mortgage contract; and, second, by virtue of the sheriff's certificate of sale issued to it on purchase of the land on foreclosure sale.

1. Before discussing the merits of the case, we will dispose [1] of defendant's contention that plaintiff was not entitled to prevail on either theory, for the reason that the complaint does not state facts sufficient to constitute a cause of action.

This contention is in the nature of a cross-assignment of error, as the question of the sufficiency of the complaint was saved for all purposes by defendant's objection to the introduction of testimony (*Boyle* v. *Chicago, M. & St. P. Ry. Co.*, 60 Mont. 453, 199 Pac. 283), and if the court's action in overruling the objection was erroneous, the judgment should be sustained on the theory of "compensatory error," under the provisions of section 9751, Revised Codes 1921, which prohibits the reversal of a judgment upon any error complained of by the appellant, if, but for the error against the respondent, the result of the trial would have been the same. (*In re Murphy's Estate*, 43 Mont. 353, Ann. Cas. 1912C, 380, 116 Pac. 1004.)

The objection interposed is couched in the language of a general demurrer to a complaint, and states no reason or ground for the contention that the complaint is insufficient, and can, therefore, have no greater effect than a general demurrer to the complaint would have had; hence, in determining the questions of law presented, matters of form will be disregarded, as well as allegations which are irrelevant or redundant, and if, on any view, the complaint states a cause of action this contention must be disregarded. (*Raymond* v. *Blancgrass*, 36 Mont. 449, 15 L. R. A. (n. s.) 976, 93 Pac. 648; *Cassidy* v. *Slemons & Booth*, 41 Mont. 426, 109 Pac. 976.)

Subdivision 2 of section 9129, Revised Codes 1921, requires [2] the pleader to state the facts "in ordinary and concise language," so that the man on the street may know what is charged therein, and, if this is done, the complaint is im-

pervious to a general demurrer. However, the statement must be of ultimate facts, and not conclusions of law drawn from facts by the pleader. (*Ridpath* v. *Heller*, 46 Mont. 586, 129 Pac. 1054; *Gauss* v. *Trump*, 48 Mont. 92, 135 Pac. 910; *Hensen* v. *Merton*, 57 Mont. 231, 187 Pac. 1017.)

The first attack made upon the complaint is that the allega-[3] tion that Scott "was long prior to the fourth day of May, 1925, in default on the payments required by said mortgage," is but a conclusion of law. Granting that counsel is correct, this allegation is preceded in the complaint, and in the same paragraph, by the allegation, following the allegations of the execution, delivery, and recordation of the mortgage in question, that Scott "failed to make the payments required by the terms of said mortgage." A copy of the mortgage is attached to and made a part of the complaint as exhibit "A," and it shows that the payments required fell due long prior to May 4, 1925.

The allegation of failure to pay the debt when due is clearly an allegation of fact; the allegation of which complaint is made may be disregarded as redundant, and, under the rule above announced, the complaint is still sufficient to withstand the attack here made upon it.

It is next contended that the complaint insufficiently alleged [4, 5] the matter of renting the premises to O'Brien; counsel contending that it does not show when the lease began, or that it had begun when the crop grown upon the premises was harvested.

At most, if the complaint is defective in this particular, it is but ambiguous or indefinite, defects which should have been taken advantage of by special demurrer. (*Allen* v. *Bear Creek Coal Co.*, 43 Mont. 269, 115 Pac. 673; *Wheeler-Motter Merc. Co.* v. *Moon*, 49 Mont. 307, 141 Pac. 665.) However, paragraph 6 of the complaint alleges that the premises were "rented" to O'Brien "for a period ending December 31, 1925, under a lease providing for the delivery to the plaintiff as rental of one-fourth (¼) of all crops raised  *  *  *  dur-

ing the year 1925," and paragraph 9 alleges that "during the crop season of 1925" there were raised by O'Brien on the premises certain crops of which plaintiff was entitled to one-fourth, and therefore sufficiently alleges the fact that the crop in question was raised under the O'Brien lease to uphold the complaint as against the general attack made upon it.

The complaint alleges that "the said O. M. Corwin Com-
[6]    pany, in executing said lease, was acting as agent for this plaintiff," and "that plaintiff was the person for whose sole use and benefit said lease was made," which allegations, defendant asserts, are but conclusions of law. Again conceding the point (*Montana Amusement Co.* v. *Goldwin Distributing Corp.*, 56 Mont. 215, 182 Pac. 119), these allegations were not essential to the statement of a cause of action, as, prior thereto, it is alleged that "on or about the 4th day of May, 1925, the said mortgagors being then in default, * * * plaintiff entered into and upon said mortgaged lands and premises, and took possession thereof, and thereupon rented said premises to one Tom O'Brien." The objectionable allegations may be treated as surplusage and the complaint be sustained.

The overruling of the objection to the introduction of testimony, therefore, did not constitute error.

2. The question before us, then, is as to whether the
[7]    conclusion of the court, to the effect that plaintiff was not the owner of the wheat in controversy at the time the sheriff attempted to attach it, is justified by the evidence. Defendant first asserts that the plaintiff did not prove that Scott was in default prior to May 4, 1925, when plaintiff took possession of the premises.

Disregarding any other testimony on the subject, the judgment-roll in the foreclosure proceeding of *Wells-Dickey Co.* v. *Scott* was introduced in evidence and is before us. It appears therefrom that the complaint in that action was filed prior to May 4, 1925, and alleged that Scott was then in default;

the judgment and decree was made and entered subsequent to May 4, 1925, and before the commencement of this action.

As to the proof by the judgment-roll, Freeman on Judgments, fifth edition, 2169, says: "A judgment may be offered in evidence for two purposes: (1) To establish the mere fact of its rendition, and those legal consequences which result from that fact. (2) In addition to the first purpose, for the further purpose of proving some other fact found by that verdict, or upon whose supposed existence the judgment is based." Section 1042, page 2179: "Whenever a judgment creditor is proceeding against a third person, and it becomes necessary to show that the judgment debtor was indebted to him, the judgment is at least prima facie evidence of that fact; * * * however, the qualification must be made that the judgment as evidence of indebtedness is limited to the time in issue and adjudicated, and does not cover the situation previously existing."

The foreclosure proceeding was commenced before Abbey took possession of the Scott premises, and the decree therein necessarily determined the issue as to whether Scott was in default at the commencement of the action, and was prima facie evidence of that fact.

The proof on this subordinate question presented was sufficient to make out a prima facie case, and, in the absence of any proof to the contrary, is sufficient to entitle plaintiff to maintain its action.

3. Defendant next contends that the contract of May 4, [8] 1925, was between O'Brien and the Corwin Company in its own right.

It is true that the contract recites that the O. M. Corwin Company is the party of the first part therein, and that it is signed "O. M. Corwin Company, by R. V. Abbey, Owner of the Land"; but in the beginning it recites that the company is the "owner of, or agent for the owner of, the land." Abbey testified that he went upon the land and took possession for the Wells-Dickey Company, and so advised O'Brien, and

thereupon rented the premises to O'Brien. His testimony as to agency was meager; no mention thereof was made on direct examination. On cross-examination, he merely testified that the Corwin Company acted as agent for various mortgagees and holders of land; on redirect, his attention was called to the allegations of agency found in the complaint, and his reply was, "That is correct." On cross-examination, his attention was called to the provision in the contract requiring O'Brien to give notice to "the party of the first part, or to Wells-Dickey Company * * * its authorized agent," and he was asked if it was not a fact that Wells-Dickey Company was agent for Corwin Company, instead of the latter being agent for the former; he replied that it was not a fact, and that the error in the contract occurred through his oversight in not changing the printed form used.

To prove agency it is not competent for the agent to state his opinion (31 Cyc. 1652); the question asked on redirect was objectionable as calling for a conclusion of the witness, and, on timely objection, the answer might have been excluded, but no such objection was interposed, and, as heretofore shown, an answer made under such circumstances must be considered. It sufficiently appears from the record that the contract was, in fact, that of the plaintiff.

4. On motion for rehearing, counsel asserts that the judgment cannot now be disturbed for the reason that the evidence concerning the ownership of the lease to O'Brien is conflicting in this: that, while Abbey testified that his acts were those of the plaintiff, his testimony is contradicted by the recitations of the instrument and the fact that Corwin Company filed a third party claim, in which its manager claimed the wheat as the property of Corwin Company.

Abbey's testimony was in explanation of the recitals in the instrument and of the Corwin Company's connection with Wells-Dickey Company, and it is clear therefrom that all that was done in the matter by Corwin Company was done in the interest of its principal, the plaintiff. The situation does not,

[82 Mont. 150.]

therefore, present a case wherein the judgment rests upon conflicting evidence, on which the court has found adversely to the plaintiff, thus barring us from disturbing the finding.

5. The validity of the contract is attacked on the ground [10] that Corwin Company, as agent for Wells-Dickey Company, could not delegate its authority to its agent Abbey.

Counsel rely upon the declaration of this court in the case of *Trent* v. *Sherlock,* 24 Mont. 255, 61 Pac. 650, to the effect that, in the absence of authority, either express or implied, to employ a subagent, the trust committed to the agent is personal and cannot be delegated. The delegation of authority there condemned was the act of the president and general manager of a mining corporation in attempting to authorize the superintendent of the mine to convey property of the corporation. On a rehearing the above opinion was modified, and it was made clear that the mining corporation had entrusted to its president "the general—practically the exclusive—management and control of its affairs in Montana." It is further said that, had the contract in question been executed by him, it would have been prima facie the contract of the corporation, while a mere superintendent has no implied authority to make such a contract. The situation here presented is very different from that considered in the *Trent Case;* here Abbey, as assistant manager, was but performing the ordinary duties of the Corwin Company as agent, charged with looking after the affairs of the mortgagees and holders of land.

As a corporation is a fictitious person, it can only discharge its duties through human instrumentalities. It has been said that a general manager of a corporation is virtually the corporation itself. (*Atlantic Ry. Co.* v. *Reisner,* 18 Kan. 458; *West* v. *Washington Ry. Co.,* 49 Or. 436, 90 Pac. 666), but this statement is too broad (2 Thompson on Corporations, 2d ed., sec. 1577). It is well settled, however, that, when executed by a general manager, a contract of a corporation will be presumed to be that of the corporation, at least until the contrary is made to appear, and particularly so where necessary to

the conduct of the ordinary affairs of the corporation. (*Edwards* v. *Plains Light & Water Co.,* 49 Mont. 535, 143 Pac. 962; *Campbell* v. *Oriental Trading Co.,* 58 Mont. 520, 193 Pac. 1112; *Carrigan* v. *Port Crescent Imp. Co.,* 6 Wash. 590, 34 Pac. 148; *Calvert* v. *Idaho Co.,* 25 Or. 412, 36 Pac. 24; *Carpy* v. *Dowdell,* 115 Cal. 677, 47 Pac. 695.) His implied powers are coextensive with the general scope of the business of the corporation (*Trenton Street Ry. Co.* v. *Lawlor,* 74 N. J. Eq. 828, 71 Atl. 234, 74 Atl. 668; *Thomas* v. *Kanawha Trac. Co.,* 73 W. Va. 374, 80 S. E. 476), although the ultimate control of the corporation rests in the board of directors. (14a C. J. 94.)

An assistant is "one who stands by and aids or helps another" (*State ex rel. Bartraw* v. *Longfellow,* 95 Mo. App. 660, 69 S. W. 596; *United States* v. *Adams* (C. C.), 24 Fed. 348), and not an agent.

There was, therefore, no delegation of the trust, imposed on the Corwin Company as agent for the plaintiff, to an agent such as is condemned in the *Trent Case,* above, but a prima facie showing, at least, that the act was that of the corporation plaintiff, acting through its authorized agent. (*Mayger* v. *St. Louis Min. Co.,* 68 Mont. 492, 219 Pac. 1102.)

6. Counsel for defendant next argue that, as there was no [11] proof of a division of the grain before attachment, the whole thereof belonged to O'Brien, and further, since there was no proof that the grain levied upon was the one-fourth due the plaintiff as rental, plaintiff was not entitled to prevail in this action, but its remedy, if it had a remedy, was against O'Brien for his failure to pay rent. This argument is based upon counsel's analysis of the Corwin Company-O'Brien contract, in which it is said: "Then follows the usual terms of a lease of farm lands on shares."

Counsel's premise is erroneous, as, incidentally, is that of both plaintiff and defendant with respect to the Scott-O'Brien contract, from which this agreement does not differ in its essential provisions on which its legal effect is predicated.

The agreement recites that the company, as owner, or agent for the owner, of the land, agrees to "lease" it to O'Brien for the season of 1925, the latter agreeing to "till and farm" the land and produce a crop therefrom; but he is accorded merely the privilege of living upon the land and occupying the buildings thereon for the purpose of caring for the crops— "legal possession and right of possession to remain in the first party." It requires O'Brien to give five days' notice before threshing the grain, which he is only allowed to store and not to sell, and provides that, on full performance and "upon reasonable request, first party [the owner or its agent] will deliver to the second party [the producer], at the place where they may be stored, legal right of possession to ✱ ✱ ✱ three-fourths of the crops produced."

In construing a contract, consideration is first to be given to the intention of the parties as expressed in the contract. (*Winkelmann* v. *Minnesota Mutual Life Ins. Co.*, 66 Mont. 451, 213 Pac. 1104; *Butte Floral Co.* v. *Reed*, 65 Mont. 138, 211 Pac. 325.) Here we have a contract in which the parties declared their intention in no uncertain terms; possession and right to possession of the land and title to the crops were to remain in first party, who, on completion of the contract, would deliver three-fourths of the crops produced to the producer as payment for his labor and investment. Such an agreement is but a contract of employment; it is the converse of the usual farm lease on crop rental, under which the tenant is held to be in possession of the land and the owner of the crop. Here the producer of the crop is but a "cropper" or sublimated employee; his possession is that of his employer, and, until division is made, title to the crop remains in the employer. This distinction has been heretofore clearly drawn. (*Cook-Reynolds Co.* v. *Wilson*, 67 Mont. 147, 214 Pac. 1104; *Kester* v. *Amon*, 81 Mont. 1, 261 Pac. 288.)

What we have just said disposes of the further contention that O'Brien, as a tenant of Scott, could not attorn to the

plaintiff on May 4, 1925, under the prohibition contained in section 7748, Revised Codes 1921, as the legal effect of the Scott-O'Brien contract was the same as the Corwin Company-O'Brien agreement. Furthermore, Scott's agreement in the mortgage to divest himself of possession was valid (*Union Central Life Ins. Co.* v. *Jensen*, 74 Mont. 70, 237 Pac. 518), and constituted a consent to the attornment under the exception contained in the above cited statute.

7. Counsel insist that, by commencing foreclosure proceed-[12] ings, plaintiff waived the right to take possession under the terms of the mortgage, citing *Union Central Life Ins. Co.* v. *Jensen*, above. That decision goes no further than to hold that "upon a judicial sale of mortgaged property the purchaser is entitled to possession by reason of the mortgage contract, for the mortgage is at an end and is merged in the judgment," etc. Here possession was taken under the terms of the mortgage immediately after commencing the foreclosure proceeding. By virtue of the terms of the mortgage contract here involved, plaintiff had a right to impose a lien upon the crops to be produced in the year 1925 as further security for the payment of the amount due on the mortgage debt, and actual and continued possession of the premises was essential to the creation and maintenance of such a lien. (*Morton* v. *Union Central Life Ins. Co.*, 80 Mont. 593, 261 Pac. 278.) Having taken possession and rented the premises prior to decretal sale, plaintiff acquired title to the crops in existence at the time of such sale.

8. Counsel contend, on motion for rehearing, that a reversal of the judgment will have the effect of subjecting defendant to a double liability, and Corwin Company might properly sue the sheriff on its third party claim presented. We think counsel are unduly concerned in this matter. Abbey, as assistant manager of Corwin Company, testified on behalf of plaintiff, and clearly showed that that company was but acting for plaintiff here.

We need not consider plaintiff's theory that it was entitled to the crop under the certificate of sale issued on decretal sale; it was entitled to recover under the first theory advanced and considered.

The judgment is reversed and the cause remanded to the district court of Pondera county, with direction to enter judgment in favor of plaintiff in accordance with its prayer for relief.

*Reversed.*

Mr. Chief Justice Callaway and Associate Justices Myers, Stark and Galen concur.