STATE ex rel. PRIESTLY, Appellant, *v.* CROFF et al., School Trustees, Respondents.

(No. 7,142.)

(Submitted November 20, 1933. Decided December 11, 1933.) .

[27 Pac. (2d) 540.]

*Mr. S. J. Rigney,* for Appellant, submitted a brief and argued the cause orally.

*Mr. W. R. McDonald* and *Mr. Horace W. Judson,* for Respondents, submitted a brief; *Mr. McDonald* and *Mr. S. C. Ford,* of Counsel, argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal by the relator, D. L. Priestly, from a judgment in favor of the defendants, trustees of school district No. 9 of Glacier county, quashing an alternative writ of mandate theretofore issued in relator's proceeding to compel the issuance of a warrant for the alleged balance due under a teacher's contract.

In the spring of 1931, D. L. Priestly, a resident of Nebraska, made application for the position of instructor in music in the Browning School; favorable action followed, and at a regular meeting of the board of trustees a resolution that "D. L. Priestly should be employed for twelve months service as music instructor at $150 per month" was passed and entered in the minutes of the board meeting. A contract was drawn on the regular printed form for teachers' contracts and duly executed. After some correspondence, Priestly came to Montana and reported for duty. School was begun at Browning on the first Monday in September, 1931, was continued for nine school months of twenty school days each, and closed on May 28, 1932, during all of which time Priestly satisfactorily performed the duties assigned to him and was paid the salary called for by his contract, i. e., $150 per month for each of the nine months of school, the final warrant being payment for the month of May. Thereafter, and before the 1st of June, Priestly demanded payment forthwith for the remaining three months of the year, or $450, which payment was refused by the board. At a meeting of the board, it informed Priestly that his salary would be paid each month during the summer vacation if he performed services during that period, and ordered him to

report for duty and instruction on the sixth; this, according to the minutes of the meeting, he refused to do. Shortly thereafter he served written notice on the board that, unless he was paid the sum of $450 by noon on June 6, he would commence "legal proceedings" immediately.

On June 22 relator filed his petition herein and secured the issuance of an alternative writ of mandate, returnable on June 30, at which time the court heard evidence and, at the close of the hearing, quashed the writ.

The question before us is as to the meaning of the contract, which will be seen to be ambiguous to some extent, and therefore requires interpretation. (*Ming* v. *Pratt*, 22 Mont. 262, 56 Pac. 279; *Lehrkind* v. *McDonnell*, 51 Mont. 343, 153 Pac. 1012.)

In interpreting a contract, the courts must, if possible, ascertain and give effect to the mutual intention of the parties at the time they entered into it (*Winkelmann* v. *Minnesota Mut. Life Ins. Co.*, 66 Mont. 451, 213 Pac. 1104), which intention is to be gathered, if possible, from the instrument itself; its substance, rather than its form, being controlling (*Ferry & Co.* v. *Forquer*, 61 Mont. 336, 202 Pac. 193, 29 A. L. R. 642).

The contract before us is drawn on the printed form provided for use in the employment of the regular teachers in our schools, but from certain changes made therein it is indicated that it was not intended to be the ordinary teacher's contract. The printed form is drafted to bind the employee to teach such subjects as are written in "for a period of at least —— actual teaching days, * * * commencing on the —— day of —— and continuing for a period approximating —— school months, until school has been in session —— actual teaching days," for which service the district agrees to pay "—— for each and every month of twenty school days. * * * " The defendants inserted in the first blank "180," left the date of the commencement blank and, after the word "approximating," inserted the figure "12," and struck out the word "school." The salary was fixed at $150 per month, but before the word "month" there was inserted the word "calendar."

We thus have the intimation that the employment was to be by the calendar month, rather than by the school month, and that the term of employment would be twelve months instead of the usual nine months. However, the contract contains the provision that the relator agrees to teach "for a period of at least 180 actual teaching days," which would constitute nine school months. This contract was sent to the relator, then in Nebraska, who executed it and returned it with a letter to the superintendent of schools asking for information on divers subjects, and closing with the following: "The contract is a little foggy about the period of school, one place saying 180 days and another twelve months. We suppose that the school period will continue for nine months, but that the salary will be distributed over twelve, is that correct?" He asked as to when he should report for duty.

The reply to these questions is not as definite as it might be, but is clear to the effect that the relator was employed for twelve months. It reads: "As your contract is on a twelve months basis it does not matter greatly when it starts. If you come August first, your contract continues till July 31st. I did not know when it would be most convenient for you to report and left the dates elastic for this purpose. When you get here if you wish we can rewrite the contract more definitely. The salary is distributed over twelve months. The school term is 180 teaching days; it is a little difficult to make the contract form—which is made up for a nine months term—conform to a twelve months job."

On receipt of this reply the relator wired the superintendent, Gold, respecting matters not relating to the length of his employment, and, on receipt of a reply, wired "everything satisfactory." He thereafter came to Montana and reported for duty without requesting a redraft of the contract.

There is evidence in the record indicating that relator understood from the first that he was expected to serve through the summer months. Gold testified that, on his arrival, Priestly inquired as to "what the summer work consisted of," to which Gold replied, "To start beginners in band work and carry on

the work with the advanced band,'' on which relator wanted to know why beginners should start in the summer-time, to which Gold replied that during the school months the instruments were in the hands of the advanced band. The witness further testified that he explained to Priestly that the services of the band, with the instructor, were required on the Fourth of July, at rodeo time, and on other occasions. Questioned on the subject, Priestly stated that he would not say that he did not have that conversation.

Relator relies upon the decision in *Finley* v. *School District*, 51 Mont. 411, 153 Pac. 1010, in support of his contention that he was entitled to the balance of his salary for the year at the time he demanded payment, but there is nothing in that decision supporting his position. There this court held that a board of trustees is without power to allow compensation to a teacher for the full twelve months where no services are required of the teacher during the vacation months, but held that, where the parties entered into a contract whereby a fixed sum was agreed upon as the full salary for the school term, but that it should be divided into twelve months payments as a matter of convenience, the contract was not open to the charge that a donation of public funds ''without the necessary *quid pro quo*'' was intended for the time spent in vacation. In the present contract there is no suggestion of a lump sum fixed for the school term, nor is there any suggestion that the monthly salary fixed was not full compensation for the services performed each month, and there is nothing in the evidence to the effect that the salary paid for each month's services did not constitute ample compensation for those services.

The only theory on which the contract before us can be held valid is that the parties intended that services should be performed and salary paid throughout the entire year. The relator was entitled to his salary of $150 at the end of each month of service, up to the twelfth month. Under the contract the final payment would be withheld until he had made a report of his work and the report had been accepted. He received salary for each month during which he rendered services, and,

when he refused to further perform his contract, his right to further salary ceased.

Judgment affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, STEWART and ANDERSON concur.