FILED
United States Court of Appeals
Tenth Circuit

June 6, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

PAULA ADUDDELL,

        Plaintiff–Appellant,

    v.

GARDNER TANENBAUM GROUP,
L.L.C.,

        Defendant–Appellee.

No. 10-6139

(D.C. No. 08-CV-00718-R)

(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **McKAY**, and **GORSUCH**, Circuit Judges.

---

Paula Aduddell appeals from the district court's grant of summary judgment in favor of her former employer, Gardner Tanenbaum Group, L.L.C. ("GTG"), on her claim of retaliation in violation of Title VII, 42 U.S.C. § 2000e-5. The district court concluded both that Ms. Aduddell failed to raise a material dispute of fact with respect to pretext and that the claim was barred by a release contained in a severance agreement signed by Ms. Aduddell and GTG. Because we agree Ms. Aduddell's claim is barred by an enforceable severance agreement, we AFFIRM without reviewing the merits of her Title VII claim.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

GTG is a real estate development and property management company. Ms. Aduddell was Executive Vice-President of Real Estate Services and was involved in developing, marketing, and leasing the company's properties. In 2005, the EEOC filed suit against GTG, alleging numerous violations of Title VII. In April 2007, Ms. Aduddell provided deposition testimony unfavorable to GTG. GTG and the EEOC ultimately settled the case.

On June 20, 2007, GTG's president informed Ms. Aduddell the company planned to modify her compensation structure so that, as GTG claimed, her incentive structure would be more consistent with other GTG employees and the company's own business model. Ms. Aduddell resigned that same day. Two days later, she e-mailed a resignation letter to GTG in which she accepted a three-month severance salary in exchange for her resignation. The following week, GTG's counsel sent an "Agreement and General Release" to Ms. Aduddell for her review and signature. The agreement provided a payment to Ms. Aduddell in exchange for her release of all potential legal claims. GTG modified the agreement at Ms. Aduddell's request, then resent it for her further review.

The final copy of the agreement, which by its terms is interpreted under Oklahoma law, contained several paragraphs concerning its execution, revocation, and notice. Paragraph 2 provided Ms. Aduddell with a severance payment in consideration for her obligations under the agreement. Paragraph 5 provided for a

general release by Ms. Aduddell of claims against GTG which she had or may have had as of the date of the agreement. Paragraph 6(4) of the agreement provided Ms. Aduddell the right "to consider this Agreement for a period of up to twenty-one (21) days prior to her execution of same and of this right to revoke this Agreement for a period of seven (7) days after its execution by the parties." (Appellant's App. at 122.) Paragraph 6(4) also stated "[t]his Agreement will not become effective until the stated revocation period has elapsed or expired." (*Id.*) Paragraph 9, titled "notices," stated in relevant part "notices, demands and communications required or preferred to be given in connection with this Agreement shall be in writing." (*Id.*) The agreement closed with the following sentence: "The parties hereto have executed this Agreement on the date set forth above," followed by two signature lines, one for GTG's president and the other for Ms. Aduddell. (*Id.* at 123.)

On June 29, Ms. Aduddell signed and hand-delivered the agreement to GTG. Upon receiving the agreement from Ms. Aduddell, GTG's owner and CEO personally acknowledged its receipt and told her "we'll get you your check." (*Id.* at 116.) GTG's president signed the agreement later that day and delivered the agreement to the company's accounting department to initiate a check request.

On July 4, Ms. Aduddell notified GTG's counsel she had signed the agreement and delivered it to GTG's CEO. On July 9, ten days after she and GTG's president signed the agreement, Ms. Aduddell e-mailed GTG's counsel to

ask when she would receive a copy of the signed agreement and her severance check. That same day, she received from GTG's counsel a double-signed copy of the agreement. She picked up her severance check the following day. Then, on July 13, fourteen days after she and GTG's president signed the agreement, Ms. Aduddell notified GTG she was invoking her right to revoke.

Upon receipt of Ms. Aduddell's revocation letter, GTG filed a declaratory judgment action in the District Court of Oklahoma County, arguing that Ms. Aduddell's attempted revocation of the agreement was untimely because it occurred more than seven days after the agreement's execution. Ms. Aduddell counterclaimed for her alleged lost earnings, and the parties bifurcated the case in order to first try the revocation issue. On cross-motions for summary judgment, the court then granted summary judgment for Ms. Aduddell. The parties subsequently stayed the case, and it remains stayed to this day.

In July 2008, Ms. Aduddell commenced this Title VII retaliation action against GTG in the U.S. District Court for the Western District of Oklahoma, alleging the company's action resulted in a loss of approximately $900,000 in earned commissions. GTG defended itself both on the merits and by renewing its claim that the severance agreement barred Ms. Aduddell from bringing her suit. On summary judgment, the district court decided to rule on the revocation issue and concluded, contrary to the state court's decision, that Ms. Aduddell's revocation was untimely. It also concluded Ms. Aduddell failed to establish one

of GTG's proffered reasons for modifying her compensation structure was pretextual. This appeal followed.

## DISCUSSION

We review the grant of summary judgment de novo, applying the same standards as the district court. *See Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1195 (10th Cir. 2008). We view the facts, and all reasonable inferences those facts support, in the light most favorable to the nonmoving party, here Ms. Aduddell. *See id.* Because our review is de novo, we need not separately address arguments that the district court erred by viewing evidence in the light most favorable to GTG and by treating disputed issues of fact as undisputed. *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 920 (10th Cir. 2004). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

As a threshold matter, we must determine whether the district court erred by revisiting the question of whether Ms. Aduddell revoked the severance agreement within seven days of its execution. Although the Oklahoma County District Court had already determined Ms. Aduddell revoked the agreement in time, under the instant circumstances we do not require the district court to reach an identical conclusion. The state court's interlocutory decision receives no preclusive effect, and principles of comity merely instruct the district court to

exercise its discretion in deciding whether to defer to the state court's ruling or render its own judgment. *See, e.g.*, *Blinder, Robinson & Co., Inc. v. SEC*, 692 F.2d 102, 105-06 (10th Cir. 1982). Because the state court issued its decision as a "journal entry," with no findings of fact or conclusions of law, the district court was within its discretion to independently consider the revocation issue. We therefore first turn our review to this part of the district court's decision.

"[G]enerally, it is said that every contract results from an offer and the acceptance thereof." *Armstrong v. Guy H. James Constr. Co.*, 402 P.2d 275, 277 (Okla. 1965). Oklahoma courts "must give effect to mutual intent of the parties as expressed in the language of the contract, so long as it is unambiguous on its face and there exists no fraud, accident, or pure absurdity affecting the agreement." *Gamble, Simmons & Co. v. Kerr-McGee Corp.*, 175 F.3d 762, 767 (10th Cir. 1999) (internal quotation marks omitted) (citing Okla. Stat. tit. 15, § 154). Thus, " 'it is the duty of the court to place itself, as far as possible, in the situation of the parties at the time their minds met upon the terms of the agreement, and from a consideration of the writing itself, ascertain their intention.' " *Sinclair Oil & Gas Co. v. Bishop*, 441 P.2d 436, 442-43 (Okla. 1967) (quoting *Bearman v. Dux Oil & Gas Co.*, 166 P.2d 199, 201 (Okla. 1917). " '[I]f this cannot be done from the instrument itself, the circumstances under which it was made, and the subject-matter to which it relates, may be considered, and with these aids, the court should so interpret the contract as to give effect to

the mutual intention of the parties as it existed at the time of contracting, so far as that intention is ascertainable and lawful.' " *Id.*

It is undisputed GTG offered Ms. Aduddell a severance agreement for her to either accept or reject within twenty-one days and Ms. Aduddell signed the agreement and returned it to GTG. Therefore, absent clear language in the agreement requiring something more, we would conclude that Ms. Aduddell accepted GTG's offer and thus end the inquiry. However, the agreement also required two signatures in order to be executed. Thus, absent any other operative terms in the contract, we conclude that the agreement is fully executed once both parties have signed.

Ms. Aduddell argues the agreement could not be executed until GTG both signed the agreement *and* provided written notice or exchange of its signature to Ms. Aduddell. Nothing in the agreement expressly requires such an act. Paragraph 6 does not mention notice, and Paragraph 9 only directs how and when notice shall be deemed given, not whether notice is required. Although Oklahoma law requires a party to communicate its assent to a contract, GTG met this obligation first by offering the written agreement for Ms. Aduddell's review and acceptance and then again by communicating its assent to Ms. Aduddell in written and verbal discussions up to and during her June 29 delivery of the signed agreement. The agreement did not require GTG to provide Ms. Aduddell with any further communication beyond what she had already received in order to

execute the contract and begin the seven-day revocation period.

Regardless, Ms. Aduddell was on notice that her revocation period began on June 29. She knew from reading the agreement that its payment provision would not become effective until after the seven-day revocation period. She was also twice informed by GTG's counsel that her severance payment would be delivered seven days after she signed the agreement. On June 29, when she signed and hand-delivered the agreement to GTG's CEO, he personally acknowledged its receipt and told her "we'll get you your check." One week later, Ms. Aduddell contacted GTG's counsel and asked when she would receive a copy of the agreement and her severance check, and she received her check shortly thereafter. Because Ms. Aduddell knew GTG would not pay her severance until after the revocation period had expired, she was on notice her revocation period began on June 29 and ended by the time she received her check. Her attempted revocation on July 14 was therefore untimely.

Because we find that Ms. Aduddell's release of claims against GTG is enforceable, we need not reach the merits of her retaliation claim. We therefore **AFFIRM** the district court's order granting summary judgment.

Entered for the Court


Monroe G. McKay
Circuit Judge